## COMMISSIONER OF INTERNAL REVE-
## NUE v. MESTA.
## No. 7701.

Circuit Court of Appeals.  Third Circuit.

Nov. 25, 1941.

Carolyn E. Agger, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for appellant.

William Wallace Booth, of Pittsburgh, Pa. (William A. Seifert, of Pittsburgh, Pa., on the brief), for respondent.

Before BIGGS, MARIS, CLARK, JONES, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

On February 14, 1935, the taxpayer's wife filed a libel for divorce in the Court of Common Pleas of Allegheny County, Pennsylvania, "from bed and board and [for] such alimony as her husband's circumstances will permit of". On March 8, 1935, Mrs. Mesta amended her libel and asked for a decree "from the bonds of matrimony". On March 22, 1935, the taxpayer signed an agreement (dated April 13, 1935) whereby he agreed to deliver to his wife certificates for 5,200 shares of the common stock of the Mesta Machine Company and certain other personal property including household furniture and furnishings of their home in Pittsburgh. The agreement also provided that Mrs. Mesta should join with the respondent in a deed conveying their home in Pittsburgh held by them as tenants by entireties to a straw man so that the property might be disposed of by the taxpayer free of any claim of his wife. The contract contained provisions whereby the parties thereto should respectively release and discharge each other from all claims or demands. Specifically the agreement provided that the property to be conveyed to her was "* * in full settlement * * * of all claims * * * for her maintenance and support * * *".

On April 12, 1935, a hearing was had upon the divorce action. On April 13, 1935, Mrs. Mesta signed the contract referred to. On April 15, 1935, a final decree was entered whereby the taxpayer and his wife were "divorced and separated from the bonds of matrimony". On April 17, 1935, Mesta in accordance with the terms of the contract delivered to Mrs. Mesta 5,200 shares of the common stock of Mesta Machine Company and on April 25, 1935, deeds executed by Mesta and Mrs. Mesta for the purpose of vesting in the taxpayer title in the dwelling house were recorded. It is agreed that the fair market value of the stock on April 17, 1935 was $156,975 and that the original cost of the stock to the taxpayer was $7,574.56. Mrs. Mesta received household furnishings which had an approximate value of $28,000 and the miscellaneous property referred to in the agreement. The value of the real estate transferred to the taxpayer was about $35,000.

On March 9, 1936, Mesta filed a gift-tax return reporting as a gift to his wife the 5,200 shares of stock and paid the tax in the sum required by law. On November 26, 1937, Mesta filed a precautionary claim for refund of the amount so paid and on December 21, 1938, the Commissioner issued a certificate of over-assessment for the full amount of the taxpayer's claim. A check for the tax and interest was issued by the Treasurer of the United States on February 8, 1939, and was sent to the respondent on March 31, 1939. Mesta received the check but wrote to the collector to put him on notice that the case at bar was pending before the United States Board of Tax Appeals. The Commissioner thereafter determined a deficiency in the respondent's income tax for the year 1935 in the sum of $31,163.18 based upon the theory that Mesta had received a taxable capital gain in disposing of the stock to his wife.

If the taxpayer realized as a taxable capital gain the amount of the difference between the fair market value of 5,200 shares of the stock transferred to his wife on April 17, 1935, and its cost to him, a deficiency was properly assessed. The Board of Tax Appeals held against the Commissioner, 42 B.T.A. 933, who has petitioned this court for review.

It is the law of Pennsylvania that permanent alimony cannot be decreed to a wife when an absolute divorce is granted her. Dixon v. Commissioner of Internal Revenue, 3 Cir., 109 F.2d 984, 986. Alimony can be granted to the wife as an incident to a divorce from bed and board. Moore v. Moore, 64 Pa.Super. 192, 194; Shoop's Appeal, 34 Pa. 233. See, also, 23

P.S. §§ 46 and 47. In the case at bar the taxpayer and his wife reached an agreement whereby the taxpayer contracted to give his wife shares of stock and other consideration in lieu of a legal obligation to support her. The change in the libel made by Mrs. Mesta on March 8th to seek an absolute divorce and the signing of the written contract by her husband on March 22nd cannot be viewed as unconnected events. When Mrs. Mesta's future had been provided for by the contract she amended her libel to relieve her spouse of any burden of support. The obligation imposed upon Mesta by the contract was substituted for the obligation imposed upon him by the law of Pennsylvania. He therefore delivered the stock in partial discharge of his obligation under the contract.

■ There is no doubt that Mesta achieved a capital gain. He paid $7,574.56 for stock which when disposed of in discharge of his obligation to Mrs. Mesta was worth $156,975. Had the stock not been transferred, he would not have achieved a taxable gain because the economic gain would have been unrealized. The disposition of the stock was the taxable event in the case at bar. This is so even though Mesta may not have received payment in money or property from Mrs. Mesta. The point which we are trying to make is clearly established by the decision of the Supreme Court in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 146, 85 L.Ed. 75, 131 A.L.R. 655, wherein Mr. Justice Stone said: "Admittedly not all economic gain of the taxpayer is taxable income. From the beginning the revenue laws have been interpreted as defining 'realization' of income as the taxable event rather than the acquisition of the right to receive it. And 'realization' is not deemed to occur until the income is paid. But the decisions and regulations have consistently recognized that receipt in cash or property is not the only characteristic of realization of income to a taxpayer on the cash receipts basis. Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him." The case cited involved a transfer of income and not a transfer of income-producing property, but it supplies an illuminating analogy.

The Board of Tax Appeals concluded that there was no way to measure the amount or value received by Mesta from the disposition of the stock. Section 22(a) of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 669, provides that " 'Gross income' includes gains * * * from * * * sales, or dealings in property, whether real or personal. * * *" Section 22(e) states, "In the case of a sale or other disposition of property, the gain or loss shall be computed as provided in section 111." Section 111 (a) provides, "The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom * * *", and subdivision (b) provides, "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received". Section 112 provides, "Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized * * *". 26 U.S.C.A. Int.Rev. Acts, pages 691, 692.

■■ We think there can be no doubt that Congress intended a measurement of values under the circumstances indicated by the statutes quoted, notwithstanding difficulties in determining those values. In the case at bar there is a gain in the value of the stock and an event whereby that gain was realized. The fair market value of the property or benefit received by Mesta for the stock may be difficult to ascertain, but in the absence of any other value being shown we think that it is proper to take fair market value. In the case at bar the amount of the taxpayer's obligation to his wife was fixed in part in terms of stock by the parties themselves who really dealt at arm's length with one another. It was so found by the Commissioner and the taxpayer has not rebutted the presumption that the Commissioner's ruling is correct. We think that we may make the practical assumption that a man who spends money or gives property of a fixed value for an unliquidated claim is getting his money's worth.

■ Obviously the transfer was not a gift or a marriage settlement as contended by the respondent. Nor can it be treated as a division of property.

In reaching this conclusion we have taken into consideration the views of the Board expressed in Rea v. Commissioner, 35 B.T.A. 1132, and like cases. Though the decisions of the Board are entitled to

great respect we cannot agree with its conclusions in the case at bar.

Accordingly, the decision of the Board is reversed and the cause is remanded, with directions to determine the amount of the deficiency in accordance with this opinion.

MARIS and JONES, Circuit Judges, are of the opinion that the decision of the Board of Tax Appeals was right for the reasons set forth in its opinion, 42 B.T.A. 933, 940. They, therefore, dissent from the conclusion reached by the majority of the court.