89 So.2d 261 (1956)
Loyd M. COLCLAZIER, Irvine E. Colclazier, and Gladys Colclazier Dawson, Appellants,
v.
Marie P. COLCLAZIER, individually and as executrix of the last will and testament of M.E. Colclazier, deceased, Appellee.
Supreme Court of Florida. En Banc.
June 27, 1956.
Rehearing Denied September 11, 1956.
Pritchard & Kurtz, Miami, for appellants.
Yonge, Whiteside & Prunty, Miami, for appellee.
PARKS, Associate Justice.
The plaintiffs in the lower court brought this suit against the defendant, individually and as executrix of the will of M.E. Colclazier, deceased, for construction of his will, an accounting, and a declaration of the rights and interests of the parties in the property of the deceased. Plaintiffs are the children of the deceased and his first wife, Clara L. Colclazier, and defendant is his widow.
The will was executed by M.E. Colclazier on the 4th day of October, 1950, in Albuquerque, New Mexico, where he *262 had resided for many years. Shortly thereafter, in the same month, he removed to Dade County, Florida, establishing his domicile, and there he resided until his death in November, 1951.
The avowed purpose of the bill is to have the Court by its decree determine it was the intention of the testator to include in his estate and dispose of by his will all of his property, both real and personal, regardless of the status of its title. It is charged that some of the properties were in his name, some in the joint names of himself and defendant, and some of the bank accounts were in their joint names, it being his intention, however, to retain title to himself in all property and bank accounts in their joint names and that defendant have no interest in them.
The defendant in her answer agrees that it was his intention to include in his will and dispose of as prescribed therein, all of the properties belonging to him. The answer denies, however, that it was his intention that title to any of the properties or bank accounts in the joint names of the parties was to be retained in him or were so retained, and denies that they were included in the devise of the will, asserting that such properties belonged to her. Other issues in the pleadings need not be discussed.
Upon the answer being filed, the cause was referred to Honorable James A. Dixon, a member of the bar, as Special Master, with directions to hear the testimony of the parties, to report his findings and make his recommendations to the Court. This was done. Exceptions were filed by plaintiffs and the Court, upon hearing, overruled them and entered the decree from which this appeal is taken. The record developes that other issues were settled in disposing of the cause in the lower Court but the main controversy it was called upon to decide, and the chief one for this Court to review, was that of determining which of the properties involved in the litigation belonged to the deceased and were therefore assets of his estate subject to devise, and which properties belonged to Marie P. Colclazier and were not subject to his devise.
Among the properties in controversy was the real property situated in Dade County, Florida, held in the joint names of the deceased and Marie P. Colclazier, husband and wife; stocks and bonds, notes and mortgages, and other miscellaneous property, some of which were held in the name of deceased, M.E. Colclazier, and some in the joint names of the deceased and the defendant, Marie P. Colclazier; deposits of certain monies in banks in New Mexico and Florida in the joint names of himself and Marie P. Colclazier with the right of survivorship. In respect to these deposits it is charged that they were so deposited by him for the sake of convenience only so that each might draw such monies, his intention being, however, that no title to such funds should pass to her.
Plaintiffs contend with respect to the real property that while the deeds purport to vest an estate by entirety in the deceased and Marie P. Colclazier, his intention was that she should take no title, that he furnished all the funds used in their purchase and, being unfamiliar with the laws of Florida with respect to estates by entireties and not knowing the nature of such title, he intended to retain sole title in himself.
The testimony of the parties was introduced before and heard by the Special Master concerning all issues between them. In a lengthy report the Master found the issues against the plaintiffs, portions of the report pertinent to the disposition of the appeal, are the following:
"Except as to the matter of the decedent's domicile at the time of his death, the remainder of the record is practically free from any conflict and is mainly documentary in nature.

*263 "M.E. Colclazier, after early financial difficulties in Oklahoma and Texas, went to New Mexico and embarked on a ranching venture. At first most of this operation was conducted on leased land, but beginning in 1943 and down to January 5, 1950, he bought lands until he assembled a large cattle ranch referred to in the testimony as the Poverty Pool Ranch.
"The deed by which he acquired title are Plaintiffs' Exhibits #5 through #18. All such conveyances are to decedent alone. All except the last, Plaintiffs' Exhibit #18, are prior to his marriage to the defendant on March 5, 1949.
"Under the law of New Mexico, community property is that acquired by husband or wife during marriage other than by gift, devise or inheritance. All property acquired before marriage is the separate property of the respective spouses. It is, therefore, apparent that, except as to one tract, all of the Poverty Pool Ranch was the separate property of the decedent and was not impressed with the incidents of community property.
"One of the chief incidents of community property is that one-half thereof belongs to the surviving spouse and is not subject to be devised or bequeathed by the deceased spouse's will. The other half, however, is subject to be devised or bequeathed in the same manner and to the same extent as separate property.
"The one tract of land in the Poverty Pool ranch which was community property consists of 440 acres (Plaintiffs' Exhibit #18) and on January 5, 1950, judging from the Federal documentary stamps attached to the deed, was acquired by the decedent for a consideration of $1500.00.
"In the spring and summer of 1950, the decedent sold the whole ranch to one Warren (Plaintiffs' Exhibit #5) for $283,805.62 in cash and a trust deed or mortgage securing a note in the amount of $301,194.38, payable to the decedent and the defendant, without more.
"Under the law of New Mexico, the estate by the entirety is unknown, and a conveyance or promise to husband and wife without more creates a tenancy in common. The Master therefore finds that the defendant owned one-half of this note and mortgage and that the other half was owned by the decedent, and became assets of his estate and subject to his will.
"The cash proceeds of the sale eventually found their way into three bank accounts,  one in Albuquerque, New Mexico, one in Roswell, New Mexico, and one in Miami Shores, Florida, and probably, though this is not entirely clear, into other investments and property owned by decedent at the time of his death.
"The Master finds that the rights of the parties in the bank deposits in the banks in New Mexico are governed by the laws of that state and the bank deposit in the Florida bank by the laws of this state, regardless of the domicile of the decedent at the time of his death, for the debtor-creditor contract created by the deposit derives its binding effect from the law of the state where the contract was made and has such legal consequences as are attributed to it by that state.
"Although New Mexico does not recognize the estate by the entirety, it does permit the creation of a joint tenancy in husband and wife with right of survivorship, provided apt words to this effect are used. The deposit contracts in both New Mexico banks contain such language, and the Master sees no reason why such contracts should not be given effect.

*264 "Plaintiffs here rely strongly upon the case of Trimble v. St. Joseph's Hospital, 57 N.M. 51, 253 P.2d 805, as holding that such a joint tenancy can be created only where the evidence is `clear, strong and convincing' that the parties understood the import of their acts and intended the result. However, this decision deals with the conversion of community property into other forms of ownership, and does not, in the opinion of the Master, limit the freedom of disposition and contract of one spouse recognized by the law of New Mexico as to his or her separate property. As pointed out above, all of the Poverty Pool Ranch, except one tract, was the separate property of decedent, and there appears to be no restriction under the law of New Mexico upon his dealings with it or its proceeds. If he chose to use it to buy a promise (the bank deposits) payable jointly to himself and his wife, with right of survivorship, no obstacle appears to his doing so.
"It is impossible to separate the separate property in the Poverty Pool deal from the one community tract, but the participation of the defendant in the deposit contract would certainly seem to amount to a purchase by her, with her part of the community right, of a similar promise to the decedent in the bank deposit.
"As to the Florida bank deposit, the Miami Shores residence and other property located in Florida, including the corporate stock in the Florida corporation, there is no reason why the instruments evidencing the rights of the parties should not be given their customary effect  that is, property conveyed to or promises running to decedent and the defendant create a tenancy by the entirety and survives to her, and property owned solely in decedent's name becomes assets of his estate and subject to his will.
"With the consent of both parties, the Master had interviews with two New Mexico lawyers  Mr. J.R. Modrall, who is attorney for the plaintiffs in that state, and Mr. Quincy D. Adams, who is attorney for the defendant. These interviews were for the sole purpose of affording assistance to the Master in taking judicial knowledge of the statutory and common law of New Mexico, as permitted by F.S.A. 92.031. * * *
"As is usually the case in instances of doubtful domicile, the evidence is inconclusive, but the Master is of the opinion that the evidence preponderates in favor of a domicile in Florida."
One of the contentions of the plaintiffs insisted upon with much force is that the defendant Marie P. Colclazier was put to an election of taking under the doctrine, that when inconsistent rights are conferred upon one he has the choice as to which he will take but cannot have both. Page on Wills, Third Edition, Sections 1346 and 1356, state as follows:
Section 1346: "Election  definition and nature. There is a broad principle of equity, running through many different subjects, to the effect that one upon whom inconsistent rights are conferred has his choice as to which he will take, but cannot have both. This right to choose between these inconsistent rights is known as election. * * * The principle as applied to wills means that he who takes a benefit under a will must adopt all the contents of the will insofar as they concern him, conforming to all the provisions of the will and renouncing any right inconsistent with it. The gift by will in lieu of the other right is said to be equivalent to an offer, and to offer something to the devisee in return for his property or interest. On the other hand, an election to take against the will has no element of a contract. An *265 election not to take under a will is not equivalent to a contest of the will."
Section 1356: "Election between community rights and gifts by will. In some states a wife acquires a vested interest in a fraction, generally one-half, of all property accumulated by husband and wife subsequent to marriage. If the husband in his will attempts to dispose of the entire ownership of the property thus accumulated, and in his will makes some provision for his wife, a case of election is created, and the wife may take the property given to her by the will, or may stand upon her rights as part owner of the community property. If testator's will refers only to his own property rights, no case for election is created. The fact that the gift is a large one does not show that it is intended to be in lieu of community property."
The matter of election referred to in these authorities was eliminated upon the findings of the Master and the confirming decree of the Court thereafter that Marie P. Colclazier was entitled to those properties, title to which (1) was already vested in her or (2) which under the law vested in her by the right of survivorship or as a survivor of an estate by entirety upon the death of M.E. Colclazier or (3) as a tenant in common with him as in the case of the purchase money mortgage of the Poverty Pool Ranch or (4) as the survivor under the conditions of the terms of the bank deposits agreements.
In conclusion, with respect to plaintiffs' arguments that the Ranch, Poverty Pool, was community property because of the fact that it was acquired during the marriage of M.E. Colclazier and defendant Marie in 1934, the Master found that said marriage was void because there was no divorce between M.E. Colclazier and his then living wife, Clara L. Colclazier, who died about the year 1940. He thereafter, on March 5, 1949, went through a marriage ceremony with Marie and this marriage is found to be lawful in all respects. In view of the decree confirming these findings of the Master, Poverty Pool Ranch was acquired by M.E. Colclazier after the death of Clara and prior to the valid marriage with the defendant Marie and therefore cannot be considered as community property under the laws of New Mexico.
We find that the Court in approving and adopting the Master's report committed no reversible error and the decree must be affirmed.
DREW, C.J., and O'CONNELL and SEBRING, JJ., concur.
TERRELL and ROBERTS, JJ., dissent.
THORNAL, J., not participating.
ROBERTS, Justice (dissenting).
The plaintiffs, appellants here, filed suit for a declaratory decree in the lower court, seeking the construction of the last will and testament of M.E. Colclazier, deceased, and other relief. Named as the party defendant was the appellee Marie P. Colclazier, individually and as the executrix of the last will and testament of the testator. The defendant is the testator's widow, and the plaintiffs are his adult children by a former marriage.
The gist of the complaint was that the testator died seized and possessed of realty and personalty situated in the states of New Mexico and Florida, some of which was owned by the testator separately and some of which was held jointly in the names of the testator and the defendant; that the testator had for many years resided in New Mexico and executed his last will and testament in that state in 1950, prior to taking up residence in Florida; that he was familiar with the laws of New Mexico, a community property state, and unfamiliar with the laws of the State of Florida, particularly *266 as to the privileges and rights incident to a tenancy by the entirety; that it was the intention of the testator, by his will, to dispose of his entire estate, whether owned by himself or jointly with the defendant, and to give defendant one-half of it; that the defendant had offered testator's will for probate and qualified as executrix thereof, and was wrongfully attempting to assert complete domination and control over assets of the estate in which she has only a one-half interest. The prayer of the complaint was that the court "determine that it was the intention of M.E. Colclazier as disclosed by his will, to include in his estate, to be disposed of by his will, all his property, regardless of the status, and that it should be divided and distributed as specified in the will." The complaint contained other prayers respecting the status of particular items of realty and personalty, in Florida and New Mexico, as to which the court was asked to decree that they constituted the separate property of the testator and assets of his estate.
In his will  which, as noted, was executed in New Mexico, a community property state  the testator stated his intention in the first paragraph thereof, as follows:
"It is my intention by this will to dispose of my entire estate, of whatever kind or character, location or description, including any separate property and the entire community property in which I and my wife, Marie P. Colclazier, share." (Emphasis added.)
The second paragraph provided for the payment of his debts and funeral expenses, and the third paragraph contained his legacy to the defendant, in the following language:
"I give, devise and bequeath to my wife, Marie P. Colclazier, one-half of my entire estate, real, personal and mixed, wherever located, whether community or separate."
In the fourth paragraph, specific legacies were made to several nieces. The fifth paragraph devised and bequeathed all the rest and residue of his estate equally among his three children (the plaintiffs here), after payment from this residue of "all Federal Estate taxes, the New Mexico Succession Tax and all other succession or inheritance taxes."
The cause was heard by a Special Master, and his findings of fact and recommendations were accepted by the Chancellor in his final decree. The decree dealt with the entire inventory of the testator's property, including that owned jointly with the defendant as well as separately owned by the testator. It designated certain items of Florida realty and personalty as the sole property of the defendant under the laws of this state relating to estates by the entirety, and it designated certain New Mexico property as her sole property under the applicable laws of that state. The remaining items of the inventory were declared to be assets of the estate of the decedent "and subject to treatment and distribution under the terms and provisions of" his last will. The net result of the decree, according to the plaintiffs, is to give to the defendant three-fourths of the property, free and clear of the federal estate tax, and to leave them with only a "negligible" share of their father's estate. This, they contend, is contrary to the expressed intention of their father as shown by the provisions of his will, quoted above. No specific finding of fact was made by the Special Master or by the Chancellor as to the intention of the testator in this respect, as prayed for in the complaint, although considerable testimony was offered by each side, without objection, respecting the testator's verbal declarations concerning his testamentary intention. The Master, in his report, stated that he had excluded such testimony from consideration because it was, in his opinion, so violative of the policy underlying the "Statute of Wills" as to be completely inadmissible.
On this appeal, the plaintiffs argue that the lower court erred in failing to interpret the testator's will as intending to dispose *267 of his entire estate, including that portion of the estate which survived to the defendant by operation of law and thus was not the subject of devise or bequest by the testator; and that, when so interpreted, the defendant is required to elect whether she will take under the terms of the will or stand on her rights under the law as the surviving spouse of the testator, under the doctrine of election as stated by Page on Wills, 3rd Ed., Sec. 1346, as follows:
"There is a broad principle of equity, running through many different subjects, to the effect that one upon whom inconsistent rights are conferred has his choice as to which he will take, but cannot have both. This right to choose between these inconsistent rights is known as election. * * * The principle as applied to wills means that he who takes a benefit under a will must adopt all the contents of the will insofar as they concern him, conforming to all the provisions of the will and renouncing any right inconsistent with it."
As has been noted, the testator stated in his will that it was his intention to dispose of his entire estate, "including any separate property and the entire community property in which I and my wife, Marie P. Colclazier, share." The testator did not say, "and the community property which I share with my wife"; he said, "and the entire community property in which I and my wife * * * share." Giving to these words their ordinary meaning, we think it is their clear and manifest implication that he was attempting to dispose of both his and his wife's shares of the community property. This intention is even more apparent when considered in the light of the entire will, Adams v. Vidal, Fla. 1952, 60 So.2d 545, and "the facts and circumstances existing at the time the will was executed, viewed in the light of what he must have had in mind at the time," Thompson on Wills, 3rd Ed., p. 334; 57 Am.Jur., Wills, Sec. 1059.
The record shows that the testator and the defendant were residents of New Mexico, prior to moving to Florida in 1950, and it was in that state that his property was originally acquired and his wills executed. He and the defendant were first married in 1934, after the testator obtained a Mexican divorce from his first wife (the plaintiffs' mother). The first wife died in 1940, and the testator and defendant went through another marriage ceremony in March of 1949, apparently because of some doubt as to the validity of the Mexican divorce. One month later, the testator executed a will containing provisions identical to those of the instant will, quoted above, and having an identical plan of distribution of his estate. He re-executed this will in 1950 while still residing in New Mexico (which is the will here in question), in order to delete certain provisions of the 1949 will relating to advancements to the plaintiffs; but, as noted, he did not change the provisions above quoted nor alter the general plan of distribution of his estate. At the time of the execution of the 1949 will, the principal asset of his estate was a ranch known as "Poverty Pool," comprising several properties gradually acquired by him since 1943, and to which he had taken title in his name alone. If his first marriage to defendant was legal, the ranch became community property under the laws of New Mexico, Section 65-401, New Mexico Statutes, 1941, and if still owned at his death, a one-half interest would descend to her, by operation of law. In re Chavez's Estate, 34 N.M. 258, 280 P. 241, 69 A.L.R. 769; 11 Am.Jur., Community Property, Sec. 79, p. 227. If his first marriage was not legal, then she would have no rights as the surviving spouse in the Poverty Pool ranch. It is clear to us that, when he executed his will in 1949, the testator wanted to make sure that the defendant would get, at his death, one-half of all that they had accumulated prior to the 1949 marriage under either circumstance  that is, whether the 1934 marriage was or was not valid. And, by the same token, he wanted to give her *268 one-half of all that they accumulated thereafter, whether as his separate property or as community property under the laws of New Mexico.
We are cognizant of the fact that at the time of the re-execution of the will in 1950, the Poverty Pool ranch had been sold and the purchase price paid partly in cash ($283,800) and partly by a mortgage ($309,200). The mortgage was made payable jointly to the defendant and the testator, which was held by the court below to create a tenancy in common between the defendant and the testator as to the mortgage debt. It was also found in the court below that the 1934 marriage was, in fact, invalid, so that the Poverty Pool ranch never acquired the status of community property. But the fact that the testator had the mortgage made payable jointly to himself and the defendant is simply further evidence of the fact that he wanted her to have one-half of everything acquired prior to their marriage in 1949, regardless of their marital status prior thereto as well as one-half of all that they would in the future accumulate.
The fact that the cash realized from the sale of the Poverty Pool ranch was later converted into Florida properties and the title thereto taken in the names of both the testator and the defendant  thus creating a tenancy by the entirety under Florida law  cannot be allowed to defeat the plan of distribution made by the testator in his will. We are still concerned with the testamentary intention of the testator; and, as noted, the conclusion is inescapable that the testator intended to include in and dispose of by his will the entire accumulation of property existing at his death, whether held in his own name or jointly with the defendant, and to give her one-half of everything, free and clear of "All Federal Estates taxes, the New Mexico Succession Tax and all other succession or inheritance taxes." This is the clear and manifest implication of the language of the will itself, which is even more apparent when read in the light of the attendant circumstances, recounted above. The plaintiffs point out, additionally, that their father could not have had in mind leaving to them, the natural objects of his bounty, only a "negligible" share of his estate; and that this would be the result if the will is construed as contended for by defendant, since to give the defendant more than one-half of the entire property (by operation of law) and then to give her one-half of the remainder (under the terms of the will) would leave them with only one-fourth of the estate, which must be divided three ways after the payment therefrom of a substantial federal estate tax.
We think, then, that even if we disregard the evidence as to the testamentary declarations of the testator, as did the Special Master (and which evidence, incidentally, is in accord with our interpretation of the testator's intention) there can be no doubt as to his intention, as above expressed, and that the lower court erred in failing to so construe his will. It follows, then, that the defendant cannot take advantage of the testamentary provisions in her behalf and, at the same time, take the property which comes to her by operation of law since to do so would be repugnant to the terms of the will. She may elect to take under the will, and thus receive one-half of the entire inventoried estate free and clear of the federal estate tax, in accordance with the clear intention of the testator; or she may elect to stand on her rights as the surviving spouse. In the latter event she will receive more than one-half of the estate (according to plaintiffs' statement) by right of survivorship; and, if her claim is not barred by Section 731.35, Fla. Stat. 1953, F.S.A., may claim her dower right in the remainder of the estate  at least, as to the Florida assets. Cf. In re Brock's Estate, Fla. 1953, 63 So.2d 510. But she cannot, in such case, take advantage of the testamentary provision in her behalf requiring payment of the federal estate tax from the portion of the estate going to the plaintiffs, and she must pay her proportionate *269 part of the tax  in other words, if the property transferred to her exceeds the marital deduction allowed under the Federal Revenue Act of 1948, § 812(e), Title 26, U.S.C.A. (I.R.C. 1939), she is ratably liable to the extent that such transfer increases the estate tax. In re Fuchs' Estate, Fla. 1952, 60 So.2d 536.
The question presented by plaintiffs respecting the status of a joint bank account of the parties in New Mexico has been considered and no error has been found in the lower court's determination that the funds remaining therein are the sole property of the defendant and not a part of the assets of the estate. No objection is here made by the plaintiffs as to the lower court's determination of the status of the other assets of the estate. Accordingly, the decree is affirmed insofar as the status of the property involved is concerned.
But, for the reasons stated, it was error for the lower court to fail or refuse to construe the testator's will in the manner contended for by plaintiffs. Accordingly, the cause should be remanded with directions to the lower court to amend its decree in conformity with the opinions herein expressed.
I would therefore affirm in part and reverse in part.
TERRELL, J., concurs.