ESTATE OF GERTRUDE FRIEDMAN, DECEASED, SAMUEL FRIEDMAN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 95074, 95075. Filed July 3, 1963.

*Sol Goodman,* for the petitioner.

*Howard K. Schwartz,* for the respondent.

DAWSON, *Judge:* Respondent determined the following deficiencies in, and additions to, the gift and estate taxes of petitioner:

| Docket No. | Taxable year ended | Tax | Deficiency | Addition to tax—Sec. 6651(a) |
|---|---|---|---|---|
| 95074 | | Estate | $20,592.27 | |
| 95075 | Dec. 31, 1957 | Gift | 2,577.57 | $644.39 |

Pursuant to joint motion of the parties, both cases were consolidated for trial. Other issues having been settled by agreement, the sole remaining issue is whether the transfer of certain real property by Gertrude Friedman within 3 years of her death was made for an adequate and full consideration in money or money's worth.

### FINDINGS OF FACT

Most of the facts have been stipulated by the parties. Their stipulation, together with attached exhibits, is incorporated herein by reference.

Petitioner's Federal estate tax return was filed on June 17, 1959, with the district director of internal revenue, Indianapolis, Ind. No credit pursuant to section 2012(a), for gift tax paid, has been allowed by respondent against petitioner's estate tax since petitioner has neither paid a gift tax nor filed a gift tax return.

Jacob Friedman, a resident of Indianapolis, Ind., died testate on August 15, 1955. He was survived by his second wife, Gertrude Friedman (hereinafter sometimes referred to as Gertrude), and three children by a previous marriage, Samuel Friedman, Leo Friedman, and Marijane Popp (hereinafter referred to collectively as the children).

Immediately prior to Jacob's death he and Gertrude had been seized, as tenants by the entireties, of certain real property located both in Indiana and in Florida. Upon Jacob's death Gertrude, as surviving tenant by the entireties, became vested by operation of the laws of both States with absolute title to these properties.[1] On October 14, 1955, Jacob's will was offered for, and the same day admitted into, probate in the Probate Court for Marion County, Ind., and letters testamentary were thereupon issued to Samuel Friedman as executor. Item I of this will stated, in part:

> In regard to my real property I do hereby declare that I have been fully informed as to the law pertaining thereto and I am aware of the fact that my beloved wife, Gertrude Friedman, should she survive me, could receive all of my said real estate as the surviving tenant by the entireties, by electing to take under the laws of the State of Indiana, rather than under the terms of this my Last Will and Testament. However, I have made the provisions contained in Item IX hereof with the confidence and belief that my said wife will respect my wishes and will abide with the terms herein set forth, in the same manner as I would respect her wishes and desires in respect thereto in the event she should predecease me.

Item IX of the will devised all of the real estate of which Jacob was seized or had any interest in at the time of his death in trust to Samuel Friedman, for the benefit of Gertrude Friedman for life, with remainder to the children (Samuel and Leo Friedman and Marijane Popp).

By attempting to devise real estate which he and Gertrude held as tenants by the entireties, Jacob thus put Gertrude to an election under the law of Indiana[2] between retaining her original interest in such real estate (i.e., the entire property) or accepting the benefits of the will.[3] On November 24, 1955, in accordance with Indiana statute,[4] Gertrude elected, as surviving wife of Jacob, to take her legal share

---

[1] See *Dotson* v. *Faulkenberg*, 116 N.E. 577 (Ind. 1917), and *Bailey* v. *Smith*, 103 So. 833 (Fla. 1925).

[2] Sec. 6–301 of the Indiana Probate Code (Burns Indiana Statutes) provides that when a married person dies testate as to any part of his estate, the surviving spouse shall have a right of election to take against the will. It is further provided that a spouse who *fails* to timely elect to take against the will shall receive the benefit of all provisions in his favor in the will, if any, and shall share as an heir, according to law, in any estate undisposed of by the will. Secs. 6–307 and 6–302. Under statutory predecessors of the above sections the Supreme Court of Indiana has held that where a husband attempted to dispose of a certain 40-acre tract of land by will which he and his wife owned as tenants by the entirety, and devised to her a life estate in such lands and other lands owned by him, remainder in fee to his children, in lieu of her interest in his lands under the law, and she *failed* to repudiate the will within the time specified, she was equitably estopped from asserting her title to said 40-acre tract as survivor of the entirety. *Young* v. *Biehl*, 77 N.E. 406 (Ind. 1906). But compare *Miller* v. *Smith*, 132 N.E. 607 (Ind. App. 1921).

[3] The Indiana rule of equitable estoppel by failure to elect under the doctrine that when inconsistent rights are conferred upon one he has the choice as to which he will take but cannot have both does not appear to obtain in Florida, at least where the subject of the inconsistent rights is real property held by the entireties. See *Colclazier* v. *Colclazier*, 89 So. 2d 261 (Fla. 1956), wherein the Supreme Court of Florida held that although a husband's will stated specifically that it was his intention to dispose of his entire estate, this did not create an election in the widow *as to property which became vested in her at her husband's death under a tenancy by the entirety*. It would thus seem that with

in his estate and renounced all provisions of his will inconsistent therewith. By choosing to take her interest in the entireties property by operation of law, she thereby precluded any possibility of divestiture under the Indiana doctrine of estoppel by failure of election.

Sometime after Jacob's death, but before March 29, 1956, the children retained David M. Lewis, an attorney, to represent them in connection with certain claims, relative to Jacob's estate, which they alleged they had against Gertrude Friedman, their foster mother. On March 29, 1956, the following letter (in part) was sent by Lewis to Gertrude's attorney, Lewis Davis:

My clients are quite disturbed over the fact that I haven't made any progress resolving the matters involved in their father's Last Will and Testament.

There are many questions that have been raised that call for answers or explanations. We are informed among other things that there was very little personal property in the name of the decedent, and in view of the statements concerning the nature of the title to all property set out in Item I of the will of Jacob Friedman, deceased, we are wondering whether or not there was not, in fact, a partnership between the decedent and his widow. We believe that serious consideration should be given by the executor whom you represent in establishing a partnership and asking that the widow come forward and make an accounting of all partnership property.

I would like very much to have a copy of the inventory in this case, and if it is at all possible I would like to consult with you concerning a proper method of bringing to a head the matters that appear to be tangled.

As a result of this letter a conference was had on August 21, 1956, between Gertrude and the children wherein both parties were represented by their respective attorneys. After some negotiation the following agreement, of even date, was entered into by the parties:

THIS AGREEMENT, between Gertrude Friedman, hereinafter referred to as Mrs. Friedman, and Samuel Friedman, Leo Friedman and Marijane Popp, hereinafter referred to as the Children,

WITNESSETH:

WHEREAS, all of the real estate owned by the decedent at the time of his death was in tenancy by the entireties with Mrs. Friedman, and

WHEREAS, a conflict has arisen over the construction of the will of the decedent, and

WHEREAS, a conflict has arisen with regard to the amount of personal property in the estate of the decedent, and in order to settle all differences between the parties, the parties have agreed as follows:

The Children relinquish any claim to the personal estate of the decedent in consideration of Mrs. Friedman paying from the funds of the decedent or her own funds the Inheritance Tax, Estate Tax and cost of administration on said estate.

The Children relinquish their rights to the real estate purportedly devised by the will in consideration of Mrs. Friedman deeding to the Children by good and

---

respect to the *Florida* property, Gertrude could not have been divested of her interest even though she were to elect to *take* under Jacob's will. As will appear hereinafter, she did not elect to so take, but *renounced* the will in favor of her legal share.

4 Secs. 6–302 and 6–303, Ind. Pro. Code.

sufficient warranty deed, an undivided one-half interest in the real estate which conveyance shall be subject to a life estate in favor of Mrs. Friedman.

The Children hereby agree that they will not sell, assign or encumber their interest in this real estate so long as Gertrude Friedman holds said life estate, excepting only that said Children reserve the right to deal with each other in the sale of their respective shares. In the event that Gertrude Friedman decides to sell any of said real estate, the Children agree to join in said sale so long as such sale is a good faith, arm's length sale.

All of the parties hereto agree to execute any and all necessary documents to carry out the intent and purpose of this Agreement.

On August 12, 1957, approximately 1 year after the execution of the above agreement, Gertrude conveyed to the children by warranty deeds an undivided one-half interest in the Florida and Indiana properties to which she had acquired absolute title upon Jacob's death as surviving tenant by the entireties. The deeds reserved to Gertrude, however, a life estate in the properties conveyed, including the right to all rents, issues, and profits accruing from such property.

On August 15, 1956, Samuel Friedman, as executor of Jacob's estate, petitioned the Probate Court of Marion County, Ind., to revoke, as improvidently issued, the letters testamentary which it had granted him on October 4, 1955, and to release him from liability as executor. In support thereof the petition stated, in part, as follows:

on the 24th day of November, 1955 Gertrude Friedman, surviving widow of Jacob Friedman, deceased, made her election to take under the law and renounced the provisions made for her under the last will of said decedent, * * *; that as a result of said widow's election, the only asset of said decedent to be administered upon was the sum of One Thousand Two Hundred Ten and seventy-five hundredths ($1,210.75) Dollars, being the balance in Savings Account #817, Fountain Square Branch, Merchants National Bank of Indianapolis; that said savings account was transferred to Gertrude Friedman, the surviving widow of decedent, * * * and was used by said surviving widow as part payment of the funeral expenses * * * of said decedent; that all of the remaining property of every kind and character whatsoever, and wherever situate, in which the decedent had any interest whatsoever, consisted of real estate held by the decedent and said Gertrude Friedman as tenants by the entireties, and certain Morris Plan Savings Certificates and State of Israel bond, held by decedent and said Gertrude Friedman as joint tenants and to the survivor; that the election of said surviving widow to take in accordance with the law resulted in said real estate vesting in her as surviving tenant by the entireties and said savings certificates and bond vesting in her as surviving joint tenant; * * * that there is not at this time nor has there ever been any estate for the undersigned to administer upon under the last will of said decedent.

WHEREFORE, the undersigned, Samuel Friedman prays that the Court will hold said letters testamentary so granted said Samuel Friedman to have been issued improvidently and revoke the same, thereby releasing the undersigned and his surety from any and all further liability arising thereunder.

That same day, the Probate Court, finding the facts contained in Samuel's petition to be true, entered an order revoking the letters improvi-

dently issued and releasing Samuel from any further liability in connection therewith.

On November 1, 1957, Gertrude Friedman filed with the district director of internal revenue at Indianapolis an estate tax return on behalf of the estate of Jacob Friedman. This return had been signed by Gertrude on August 12, 1957, and was prepared by Edwin Hughes, an attorney, who was familiar both with Jacob's estate and the above-described transactions which took place between Gertrude and the children after Jacob's death. On Schedule E of this return are listed all of the Indiana and Florida properties which Jacob and Gertrude had held by the entireties. Schedule M of the return lists all of the Schedule E property as qualifying for the *marital deduction*. In answer to question 4, Schedule M, Gertrude affirmed that, according to her information and belief, no person, other than herself as surviving spouse, had asserted or contemplated asserting a right to any property interest listed on Schedule M. We note that only one item of personal property is listed on this estate tax return as having been owned by Jacob *individually* at his death. That item is a savings account in the amount of $1,210.75 (No. 817, Fountain Square Branch, Merchants National Bank & Trust Co.).

Gertrude Friedman died on December 17, 1957. In her will she appointed Samuel Friedman as her executor. To each of her step-children (Samuel and Leo Friedman and Marijane Popp) she left a cash bequest of $1,000. The balance of her estate, which consisted for the most part of her remaining one-half interest in the Florida and Indiana properties she and Jacob had held by the entireties, she devised six-sevenths to her brothers and sisters and one-seventh to her nieces and nephews.

In his statutory notice in Docket No. 95075 respondent determined a deficiency in petitioner's gift tax on the ground that the transfer by Gertrude Friedman on August 12, 1957, of remainder interests in the Florida and Indiana properties was without an adequate and full consideration in money or money's worth within the meaning of section 2512 and was therefore a gift. In Docket No. 95074 respondent determined a deficiency in petitioner's estate tax on the ground that the same transfer, without an adequate and full consideration in money or money's worth, having been made by Gertrude Friedman within 3 years of her death was a transfer in contemplation of death within the meaning of section 2035.

OPINION

The instant cases, although involving distinctly different taxes, present to us an *in pari materia* situation. The phrase "an adequate and

full consideration in money or money's worth," common to both the estate [5] and gift tax [6] statutes here pertinent, is to be given an "identical construction" in regard to each of them. *Merrill* v. *Fahs*, 324 U.S. 308 (1945); *Harris* v. *Commissioner*, 340 U.S. 106 (1950); *Estate of John M. Goetchius*, 17 T.C. 495 (1951). Consequently, if the transfer under scrutiny is considered as made for an adequate and full consideration for gift tax purposes it likewise is to be considered for estate tax purposes.

Section 25.2512–8, Gift Tax Regs., provides, in part, that a "transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth." Petitioner's position is that the property here involved was transferred by Gertrude in compromise of a bona fide dispute between herself and the children, and that pursuant to this compromise the children relinquished certain "rights to the real estate purportedly devised by * * * [Jacob's] will," which relinquishment had a value that was equal in money or money's worth to the property transferred. We agree.

In the case of *Catherine S. Beveridge*, 10 T.C. 915 (1948), appeal dismissed (C.A. 4, 1948), acq. 1949–1 C.B. 1, the taxpayer's daughter, prior to marrying a man to whom taxpayer objected, had transferred to her, without consideration, certain valuable real estate and personal property. Several years after the marriage, which had resulted in a complete estrangement between mother and daughter, the daughter made demand for the property, alleging duress and threatening suit. After lengthy negotiation and upon advice of her attorneys, the taxpayer agreed to, and did, place $120,000 in trust for her daughter

[5] SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale far an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) APPICATION OF GENERAL RULE.—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment) ; but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.

[6] SEC. 2512. VALUATION OF GIFTS.

(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

obtaining thereby a discharge from all claims. Holding that the daughter's promise to forbear suit constituted an adequate and full consideration in money or money's worth for the mother's transfer of the $120,000, we said:

The testimony of petitioner's advisors and attorneys convinces us that in making the transfer petitioner was not actuated by love and affection or other motives which normally prompt the making of a gift, and further, that the settlement to which she agreed on her attorney's advice was that which they and she regarded as advantageous economically under the circumstances. Perhaps she could have successfully resisted the daughter's threatened suit, but her attorneys were not certain of the outcome of the litigation and so advised her; the value of the property defended was substantial, and by accepting the settlement, she avoided additional legal expenses. She acted, in our opinion, as one would act in the settlement of differences with a stranger.

We further noted that the release from unliquidated claims has a recognizable value in money or money's worth and quoted from *Commissioner* v. *Mesta*, 123 F. 2d 986 (C.A. 3, 1941), certiorari denied 316 U.S. 695 (1942), to the effect that "a man who spends money or gives property of a fixed value for an unliquidated claim is getting his money's worth."

Nothing has appeared herein which would distinguish the present case from *Catherine S. Beveridge, supra.* Gertrude and the children were in serious disagreement over the content of Jacob's estate. The children further believed that they were entitled to at least a part of the Florida and Indiana properties and apparently were willing to institute suit to determine their rights. Gertrude might successfully have resisted this suit, but, as with all litigation, the outcome could not be predetermined. The settlement was made upon advice of her attorney under circumstances which it may be assumed both Gertrude and her attorney regarded as "advantageous economically." Therefore, it is our view that the transfer by Gertrude of a remainder interest in the properties in question was made for an adequate and full consideration in money or money's worth. See and compare, however, *Bailey* v. *Ratterre*, 144 F. Supp. 449 (N.D. N.Y. 1956), affd. 243 F. 2d 454 (C.A. 2, 1957). This being so, no part of the transfer is either a gift within the meaning of section 2512(b) or includable in Gertrude's gross estate under sections 2035, 2036, or 2043. Since the transfer was not a gift, it follows that the failure to file a gift tax return was due to reasonable cause and not due to wilful neglect.

*Decision will be entered in Docket No. 95074 under Rule 50.*

*Decision will be entered in Docket No. 95075 for the petitioner.*