**James A. FISHER, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 15083.**

United States District Court
W. D. Pennsylvania.

Dec. 27, 1957.

Edward R. Lawrence, Pittsburgh, Pa., for plaintiff.

D. Malcolm Anderson, U. S. Atty., for Western Dist. of Pennsylvania, Pittsburgh, Pa., for defendant.

McILVAINE, District Judge.

The above-entitled cause came on regularly for trial and the Court having duly considered the evidence and being fully advised in the premises now finds the following:

### Findings of Fact

1. This action arises under the Act of June 25, 1948, c. 646, 62 Stat. 933, as amended, Title 28 of the United States Code Annotated, § 1346.

2. Plaintiff's claim is for the recovery of income tax paid in the year 1954 of $5,468.64 plus interest.

3. In his 1954 income tax return, plaintiff deducted $8,000 for attorneys' fees paid by him to Sherman T. Rock of the law firm of Paul, Lawrence & Rock of Pittsburgh, Pennsylvania.

4. On or about February 29, 1956, the District Director of Internal Revenue disallowed the deduction of $8,000 and assessed additional income tax against the plaintiff for the year 1954 in the amount of $4,881.60 together with interest thereon to February 23, 1956, in the amount of $255.31 and a penalty for un-

derestimation of declaration of estimated tax in the amount of $331.73 or a total of $5,468.64.

5. On March 5, 1956, plaintiff paid said additional tax, interest and penalty to the District Director of Internal Revenue for the 23rd District of Pennsylvania.

6. On April 4, 1956, plaintiff filed with the District Director of Internal Revenue for the 23rd District of Pennsylvania a claim for refund of said additional tax, interest and penalty.

7. Defendant has conceded the issue on the alleged under-estimation of declaration of estimated tax leaving only the issue in the case of the matter of the deductibility of the attorneys' fees in the year 1954, and in the amount of $8,000 under Section 212 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 212.

8. The plaintiff, James A. Fisher, a resident of Pittsburgh, Pennsylvania, was married to Jane Scheers Fisher in October of 1943. They had three children, who in 1953, were aged nine, six and three, respectively.

9. The marriage having been unhappy, on October 6, 1953, Mr. Fisher at the request of his wife moved out of his house on a trial separation basis.

10. A few days after moving out, Mr. Fisher was contacted by the attorney for Mrs. Fisher who informed him Mrs. Fisher contemplated divorce and that there would have to be a permanent financial arrangement for Mrs. Fisher pending which there would have to be a temporary arrangement for her support.

11. On October 21, 1953, Mr. Fisher consulted Attorney Sherman T. Rock who advised him of Mrs. Fisher's legal right to alimony under the Pennsylvania law and of the approximate amount the Court might require him to pay Mrs. Fisher for support and maintenance in a proceeding of divorce from bed and board and in a non-support suit in County Court.

12. In the first meeting with Mr. Rock and thereafter until December 14, 1953, Mr. Fisher insisted to his attorney that his wife's claim for divorce was justified, that he did not wish to contest it and that he desired to make a fair financial settlement with her.

13. In the fall of 1953, and during the year 1954, Mr. Fisher was the vice-president and a stockholder of Fisher Scientific Company, a Pittsburgh concern; he was the owner of 4,630 shares of its stock representing 11% of its issued and outstanding stock; his salary was $17,685 per year and his annual income from his stock was $18,520. Substantially all of taxpayer's estate and almost his exclusive source of income was his interest in Fisher Scientific Company.

14. That the stock of Fisher Scientific Company in 1954 and for many years prior thereto had paid in dividends, $4 per share annually.

15. From October 21, 1953, until approximately December 14, 1953, Mr. Rock performed legal services for Mr. Fisher devoted almost entirely to adjusting plaintiff's liability to his wife so as to prevent the breakup of his stock holdings in Fisher Scientific Company which would have reduced his income producing property and jeopardized his income producing position with that company.

16. Mr. Rock's services from October 21, 1953, to approximately December 14, 1953, consisted of making calculations as to the amount of the gross financial settlement Mr. Fisher might be required to make with Mrs. Fisher, methods of making the settlement without disposing of Fisher Scientific Company stock, and prolonged negotiations with counsel for Mrs. Fisher at the office of both attorneys and at Mr. Rock's home.

17. Mr. Fisher through Mr. Rock made offers of financial settlement to Mrs. Fisher amounting in the maximum to $145,000 all of which are so adjusted as to protect Mr. Fisher's stock in Fisher Scientific Company.

18. All of Mr. Fisher's offers were rejected and demands were made on him of a financial settlement totalling at least $250,000 with no assurance that even that figure would be acceptable.

19. Mr. Fisher resisted Mrs. Fisher's demands for such a large gross settlement because it would require the sale of a considerable part of his Fisher Scientific Company stock which would have resulted in the loss of a large part of his annual income producing property and possibly his income producing position with the company.

20. Mrs. Fisher rejected a proposed financial arrangement which included a trust of Fisher Scientific Company stock on the ground that Mr. Fisher and his family might cause the dividends paid on that stock to be reduced.

21. To influence Mr. Fisher to make a large financial settlement, Mrs. Fisher through her attorney threatened disclosures that would reflect discredit upon Mr. Fisher and bring disgrace on him and members of his family; refused to let him visit the children, and entered suit in the County Court of Allegheny County for support even though she was then receiving substantial monthly support under an interim arrangement.

22. On Thanksgiving morning, following the entry of the suit in County Court for support, the newspapers published a story to the effect that Mr. Fisher had left the family residence and had deprived his wife and children to the extent that it was necessary to file suit for adequate support. As a result of that publicity, friends of Mr. Fisher later informed his attorney that the conduct of Mrs. Fisher would bear investigation.

23. In the investigation that followed, sufficient evidence was obtained about Mrs. Fisher's personal conduct, as a result of which, Mr. Fisher's attorney on December 14, 1953, on instructions from Mr. Fisher, withdrew all offers of support and issued an ultimatum to Mrs. Fisher to accept $5,000 in cash, counsel fees and the continuation of the existing arrangement of $600 a month for the children and file suit for absolute divorce, or Mr. Fisher would file suit for an absolute divorce, charging adultery and naming the corespondent.

24. That same day Mrs. Fisher agreed to enter suit for divorce and refused to accept even the $5,000.

25. Mr. Fisher did not file an answer to the divorce or contest it and a divorce was granted to Mrs. Fisher on March 5, 1954. An agreement was entered into on February 19, 1954, between Mr. and Mrs. Fisher for $200 per month support for each of the children, visitation privileges for Mr. Fisher and a division of the personal property.

26. Mr. Rock rendered Mr. Fisher separate bills for his services charging $2,500 for his services in connection with the divorce and $8,000 for his services from October 21, 1953, to November 14, 1953, in negotiating a financial settlement. The deductibility of the payment of $8,000 is the item in dispute.

### Conclusions of Law

1. The services, for which the attorneys' fee in controversy was paid, were not to prevent the payment of the liability due Mrs. Fisher, but to adjust the method of satisfying that liability in a manner which would not unnecessarily reduce plaintiff's income from property which he owned, and hence it was for the purpose of conserving and maintaining this income-producing property.

2. The controversy between the spouses from October 21, 1953, to December 14, 1953, did not involve the question of liability but to the manner in which it might be met, the wife having demanded a part of the husband's income-producing property, control over which affected the husband's general income-producing capacity, and the legal fees incurred by the husband are, therefore, deductible under Section 212(2) of the Internal Revenue Code of 1954.

3. The fact that the same attorneys acted for plaintiff in connection with his domestic controversy, even though it resulted in the elimination of substantially all liability, does not convert the services rendered by them prior thereto, in the matter of the negotiation of an agreement by which the liability to Mrs. Fish-

er for property would be so adjusted as to conserve and protect plaintiff's specific holdings in Fisher Scientific Company, to personal living or family expense of plaintiff.

4. The expenditure of the attorneys' fees had a proximate and direct relation to the conservation and maintenance of specific property, the ownership of which enabled plaintiff to receive income and is deductible under Section 212(2) of the Internal Revenue Code of 1954.

An appropriate order may be submitted.