### L. W. MESTA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96531. Promulgated October 10, 1940.

*W. A. Seifert, Esq., W. W. Booth, Esq.,* and *A. G. Wallerstedt, C. P. A.* for the petitioner.

*J. Harrison Miller, Esq.,* for the respondent.

934

Mellott: The Commissioner determined a deficiency in petitioner's income tax for the year 1935 in the amount of $31,163.18. The facts are found to be as stipulated. For present purposes the following summary will suffice.

Petitioner, a resident of Pittsburgh, Pennsylvania, duly filed his return of income for the taxable year with the collector for the twenty-third collection district of Pennsylvania. The tax shown to be due was paid. He had been married on August 19, 1921, and he and his wife lived together until October 12, 1934, on which date they separated. There was no issue as a result of the marriage.

On February 14, 1935, petitioner's then wife, Cora Jane Mesta, filed a libel in divorce, praying for a decree divorcing her and petitioner "from bed and board and such alimony as her husband's circumstances will admit of." On March 8, 1935, her petition to amend the libel to ask for an absolute divorce was granted. Bill of particulars and answer thereto were duly filed. On April 12, 1935, hearing was had and on April 15, 1935, a final decree granting the wife an absolute divorce was entered.

On March 22, 1935, petitioner signed and acknowledged, in duplicate, an agreement attached to the stipulation of facts filed herein. It was delivered to counsel representing the wife in the libel action. She signed and acknowledged both copies on April 13, 1935, and one of the duplicate originals was delivered to counsel for petitioner herein on April 17, 1935.

The agreement provided that Mesta should deliver to Cora Jane Mesta certificates for 5,200 shares of the common stock of the Mesta Machine Co., endorsed in blank, a diamond ring, title certificate for a Cadillac automobile, a set of golf clubs and bag, all household furnishings in their home and all dividends on the 5,200 shares of stock, declared or paid after March 6, 1935. Mesta gave up any claims which he might have against her or her property or estate growing out of the relationship of husband and wife. Cora Jane Mesta agreed that the home, which was owned by her and Mesta as tenants by the entirety, should vest in him through the intermediation of a "straw man", and that the delivery of the securities and property mentioned above by him was "in full settlement and satisfaction of all claims and demands on the part of Mrs. Mesta for her maintenance and support, and in lieu of all rights which she may now have, or hereafter acquire, against the property of Mr. Mesta, as wife, widow, or in any manner arising out of or resulting from the relationship of husband and wife * * *." She also released Mesta, his heirs, executors, administrators and assigns, from all claims for support and maintenance and from all rights, interests, claims, demands or

preferences in or against him or his estate that she might have as wife, widow, or otherwise.

On April 17, 1935, petitioner, in accordance with the terms of the agreement, delivered to Cora Jane Mesta 5,200 shares of the Mesta Machine Co. stock and on April 25, 1935, deeds for the purpose of vesting title to the home in petitioner were recorded.

As of April 13, 1935, petitioner was possessed of an estate in personalty of approximately $1,150,000 and the value of the real estate (home) was approximately $35,000. The household furnishings had a value of $28,000 and Cora Jane Mesta claimed them and the other property referred to in the agreement.

Petitioner was 45 years of age and his wife was 57 years of age on April 17, 1935. The present worth of $1 payable to a woman 57 years of age at the death of her husband, aged 45, assuming she outlives him, is $0.187.

The fair market value of 5,200 shares of Mesta Machine Co. stock on April 17, 1935, was $156,975. The said 5,200 shares had a cost or base to petitioner of $7,574.56, as set out in the notice of deficiency.

On March 9, 1936, petitioner filed a gift tax return, listing as a gift to his wife 5,200 shares of Mesta Machine Co. stock valued at $142,350. He computed the gift tax to be $3,346.13 and this amount was duly paid to the collector. On November 26, 1937, petitioner filed a claim for refund of the amount paid as a gift tax and on December 21, 1938, the Commissioner issued a certificate of overassessment for the full amount. Check for the gift tax and interest thereon was duly issued by the Treasurer of the United States on February 8, 1939. It was transmitted by the collector to petitioner on or about March 31, 1939, petitioner's counsel having written the collector, "placing him on notice that this case was pending in the United States Board of Tax Appeals and advising him that the acceptance of the aforementioned check in no way prejudiced petitioner's rights or contentions that no taxable profit resulted from the aforesaid 1935 transaction." This position was reiterated in a letter written by petitioner's counsel to the collector on or about April 1, 1939, acknowledging receipt of the check.

The respondent determined that petitioner had "realized taxable income in the transaction whereby * * * [he] transferred 5,200 shares of * * * Mesta Machine Co. * * * [stock] to Mrs. Cora Jane Mesta in accordance with a formal separation agreement dated April 13, 1935." He computed it as follows:

| Base | Fair market value 4/17/35 | Gain | Taken into account as capital gain |
|---|---|---|---|
| $7,574.56 | $156,975.00 | $149,400.44 | $57,018.95 |

It is alleged in the petition that the Commissioner erroneously determined that petitioner realized taxable income in the transaction whereby he transferred the shares of stock to his former wife. At the hearing and upon brief petitioner denies that he received "gains, profits, or income" within the meaning of section 22 (a) or (e) of the Revenue Act of 1934, or that the transaction was taxable under section 111 of the same act. In the alternative he urges that section 22 (b) (3) of the Revenue Act of 1934 and article 22 (b) (3)-1 of Regulations 86, promulgated under it, negative any suggestion of tax to him. The sections and article cited are shown in the margin.[1] The alternative contention will first be considered briefly.

The section cited by petitioner in this connection (22 (b) (3), *supra*) excludes from gross income "the value of property acquired by gift, bequest, devise, or inheritance * * *." His theory seems to be that, since he made a "gift" of the property to his wife, the section in question would preclude the Commissioner from including in his income the value of the property given away. Both parties agree that we are not charged with the responsibility of determining in this proceeding whether he made a taxable gift to his wife or not. The question is the much narrower one: Did petitioner *give* the property to his wife; and, if so, does the cited section preclude its inclusion in his income?

Respondent points out that the section "relates to the treatment by taxpayers of receipts by them of gifts, bequests, devises or inherit-

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from * * * gains or profits and income derived from any source whatever.

*   *   *   *   *   *

(e) DETERMINATION OF GAIN OR LOSS.—In the case of a sale or other disposition of property, the gain or loss shall be computed as provided in section 111.

SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

SEC. 22. GROSS INCOME.

*   *   *   *   *   *   *

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

*   *   *   *   *   *

(3) GIFTS, BEQUESTS, AND DEVISES.—The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income);

ART. 22 (b) (3)-1. *Gifts and bequests.*— * * * An amount of principal paid under a marriage settlement is a gift. Neither alimony nor an allowance based on a separation agreement is taxable income. * * *

ances, and has no relation whatever to the issue here involved." This is so obvious from an examination of the act that we do not deem it necessary to engage in any extended discussion. The act excludes from gross income the value of property *"acquired* by gift." If anyone acquired the property in question by gift, it was the wife. But she is not before us, and, since we are not required to determine whether petitioner made a taxable gift or not, we think the whole question may be passed. It may not be amiss to point out, however, that the Circuit Court of Appeals for the Second Circuit, in *Commissioner* v. *Hyde*, 82 Fed. (2d) 174, in answer to a husband's argument that a trust established for the benefit of a wife, under circumstances quite similar to those before us, was a "voluntary gift", said that "to hold that the trust was established as a voluntary gift * * * would be to close one's eyes to the realities."

Nor is petitioner upon sound ground in contending that the amount was a "marriage settlement" within the purview of article 22 (b) (3)–1, *supra*, and hence a gift. The term appears to have been used in its ordinary and generally accepted meaning as having reference to a contract between a man and a woman under which the title to certain property is changed in contemplation of, or contemporaneously with, their marriage. The transfer in question was made in connection with a dissolution of a marital relation and because the parties realized that it would "no longer be possible for them to live as husband and wife." That it was not a gift within the purview of the article cited accords with petitioner's view, as reflected in his claim for refund, and with the view of the respondent as set out in his certificate of overassessment. We think it is also in accord with the rationale of such cases as *Douglas* v. *Willcuts*, 296 U. S. 1; *Commissioner* v. *Hyde, supra; Helvering* v. *Fuller*, 310 U. S. 69; and *Helvering* v. *Leonard*, 310 U. S. 80. It follows that, if the respondent's determination is to be overturned, it must be upon some theory other than that set out in petitioner's alternative contention.

The question discussed at length by each of the parties is whether or not petitioner made a disposition of the stock which resulted in gain or profit to him. The respondent contends that he did, stating his position thus: "The * * * shares * * * were transferred by the petitioner to his estranged wife [who was suing him for divorce] as payment *pro tanto* in obtaining a full discharge from his duty to support her. Under this agreement there was no continuing obligation, contingent or otherwise. * * * The amount included as income taxable to the petitioner represents only the increment in value of said securities during the period they were held by him." In other words, he contends that the increment in value was as effec-

tively realized by the petitioner as it would have been if he had sold the stock and used the cash to pay his obligation to his wife. Cf. *Sunflower Packing Corporation*, 2 B. T. A. 1104. He argues that the inclusion of said amount in petitioner's gross income is justified under *Suisman* v. *Eaton*, 15 Fed. Supp. 113; affirmed per curiam, 83 Fed (2d) 1019; certiorari denied, 299 U. S. 573; *William R. Kenan, Jr., et al., Trustees*, 40 B. T. A. 824; affd., 114 Fed. (2d) 217; *Sherman Ewing*, 40 B. T. A. 912; *Anheuser Busch, Inc.*, 40 B. T. A. 1100 (on appeal C. C. A., 8th Cir.) ; by the reasoning of the Supreme Court in *Helvering* v. *Fuller, supra;* and by analogy to the reasoning of the court in *Glendinning* v. *Commissioner*, 97 Fed. (2d) 51, which was followed in *Dixon* v. *Commissioner*, 109 Fed. (2d) 984, and other cases.

The cited cases have been examined; but it is not believed that they, individually or collectively, justify the position taken by the respondent. Those in the first group hold that an estate realizes gain through the distribution of securities at their market value, when such distribution discharges an obligation to make a cash payment, if the value at which they are distributed exceeds the cost basis. This is merely an application of the familiar rule that the liquidation of an indebtedness by the transfer of property at its market value results in gain or loss equivalent to the difference between the indebtedness liquidated and the cost or basis of the property given up. Cf. *Twin Ports Bridge Co.*, 27 B. T. A. 346; *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *Carlisle Packing Co.*, 29 B. T. A. 514. Each of the other cases cited involved the taxability of a husband upon the income of a trust set up by him for the benefit of his divorced wife.

It is true that some of the language used by the Supreme Court in *Helvering* v. *Fuller, supra*, if considered apart from its setting, gives support to respondent's contention. In this category is the statement by the Court that a transfer of securities by a husband to a wife is not "different from one where any debtor, voluntarily or under the compulsion of a court decree, transfers securities, a farm, an office building or the like, to his creditor in whole or partial payment of his debt." It must be kept in mind, however, that the Court was not considering the incidence of income tax upon the disposition of such property, but was concerned only with the question whether the husband or the wife would be taxable upon the "income subsequently accrued and paid" upon the property transferred. Its holding to the effect that the wife, rather than the husband, was taxable upon the income of the trust is not determinative of the question before us.

Petitioner argues (1) that he realized no "gains, profits and income" as such terms are used in the revenue act; (2) that section 111 can be applied only where it is possible to evaluate "the property (other than money) received"; (3) that he received nothing which could be sold or disposed of, the rights given up by the wife not being susceptible of valuation and any benefit to him being of a purely negative character; and (4) that if he did not make a gift or a marriage settlement (as discussed in his alternative contention) he merely made a division of his property with his wife.

It is a cardinal principle that in interpreting tax-imposing statutes, in case of doubt, "they are construed most strongly against the Government and in favor of the citizen." *Gould* v. *Gould*, 245 U. S. 151. The statute imposes a tax upon "net income"—"gross income" less certain specified deductions. Gross income includes "gains, profits, and income derived from * * * sales, or dealings in property" "growing out of the ownership or use or interest of such property"; "gains or profits and income derived from any source whatever." The basic concept embodied in the words "gains, profits, and income" is that the recipient is richer, better off, than he was before; that he has *received* something of exchangeable value. The Supreme Court so interpreted the language of the statute in the oft cited case of *Eisner* v. *Macomber*, 252 U. S. 189, 207: "* * * something of exchangeable value *proceeding from* the property, *severed from* the capital however invested or employed, and *coming in*, being *'derived'*, that is, *received* or *drawn by* the recipient [the taxpayer] for his *separate* use, benefit and disposal * * *." The section of the revenue act necessarily relied upon by the respondent to support his determination—section 111 (b), *supra*—presupposes that there has been a "disposition of property" resulting in the receipt of money, property having a "fair market value", or both. If neither has been received by the petitioner, the asserted tax can not be sustained.

The stipulated facts show that there was a "disposition of property" by petitioner. The shares were transferred and delivered to his wife. He received no money; so section 22 (b) can be applied only in the event the fair market value of the property (other than money) received by him exceeds the basis of the property given up. Cf. *Frank C. Deering*, 40 B. T. A. 984. The basis of the property given up was $7,574.56. Respondent contends that the parties themselves—i. e., the petitioner and his wife, both of whom were represented by counsel—fixed the fair market value of the property received by the husband at $156,975 and that "their valuation, in the absence of other evidence, should control." Petitioner argues that such valuation is not controlling; that it was merely the agreed

value of the stock given up; that he received nothing which he could sell or dispose of; and that, even if it be held that his right to dispose of his property free of any claim on the part of his divorced wife and to be relieved from his obligation to provide for her support and maintenance constituted "property", as used in section 111, *supra*, still it had no "fair market value" and therefore could not constitute income to him.

The question is not free from doubt, but we are of the opinion that on the whole, petitioner's contentions are the more tenable. The value agreed upon by the husband and wife is not controlling. It is doubtful if the respondent would so contend if, peradventure, petitioner were claiming a loss, the shares having an agreed fair market value of $7,574.56 when given up and a cost basis of $156,975. But however that may be, there is substantial merit in petitioner's contention that it is impossible to evaluate the rights received by him. What is the measure of the value of the wife's right to maintenance and support? It is dependent upon many factors—the financial success or failure of the husband, his generosity, the thrift or acquisitiveness of the wife, the length of life of both parties, the rise and fall of markets, and in Pennsylvania at least, the continuance of the marriage relation; for under the law of that state a decree of divorce extinguishes all right to support, and alimony can 'not be awarded except in the case of insanity of one of the spouses. *Henry Oliver Rea*, 35 B. T. A. 1132, and cases cited. And how shall we evaluate the statutory right of a 57-year old wife to share in the estate of her 45-year old husband? It is also dependent upon many factors—the value of the husband's property at death, the number of issue then living, and the death of the husband prior to the death of the wife, to mention some of them. Borrowing the language of Mr. Justice Brandeis in *Humes* v. *United States*, 276 U. S. 487: "Neither taxpayer, nor revenue officer—even if equipped with all the aid which the actuarial art can supply—could do more than guess at" it. We are of the opinion that the impossibility of evaluating the rights received by the husband constitutes an insurmountable obstacle to the application of section 22 (e) in conjunction with section 111 (b), *supra*.

Our conclusion that the respondent erred in determining the deficiency, while we are of the opinion it is justified upon the grounds discussed, need not rest solely thereon. Being concerned primarily with problems arising under the revenue act, it is but natural that we first explore its provisions in an effort to determine a proceeding before us. But coming for the nonce to an examination of the agreement between the petitioner and his wife, what would it be construed to be in an ordinary judicial proceeding where no question

of taxation is involved? The answer is obvious: merely a property settlement between a man and his estranged wife—in other words, a division of property. To hold that a man has realized taxable income by giving up a substantial portion of his property seems to us unreasonable and not justified either under general law or under the revenue act.

We are of the opinion and hold that the Commissioner erred in determining the deficiency in tax.

*Judgment will be entered for the petitioner.*