279 F.2d 27
 60-2 USTC P 9484
 COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Homer H. and Ina Mae MARSHMAN, Respondents.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
ESTATE of Gordon A. STOUFFER, Deceased, Mark A. Loofbourrow,
Executor, Respondent.
ESTATE of Gordon A. STOUFFER, Deceased, Mark A. Loofbourrow,
Executor, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 13944-13946.
 United States Court of Appeals Sixth Circuit.
 May 31, 1960.
 
 Carolyn R. Just, Washington, D.C. (Charles K. Rice, Lee A. Jackson, Helen A. Buckley, I. Henry Kutz, Sharon L. King, Washington, D.C., on the brief), for Commissioner of Internal Revenue.
 William F. Snyder, of Marshman, Hollington & Steadman, Cleveland, Ohio, for Homer H. and Ina Mae Marshman.
 Warren E. Hacker (James C. Davis, of Squire, Sanders & Dempsey, Cleveland, Ohio, on the brief), for Estate of Gordon A. Stouffer, etc.
 Before MILLER, WEICK and O'SULLIVAN,[1] Circuit Judges.
 SHACKELFORD MILLER, Jr., Circuit Judge.
 
 
 1
 This litigation involves the respective tax liabilities of Gordon A. Stouffer and his divorced wife Ina Mae Marshman arising out of the divorce and the property settlement therein, which was granted to the wife on June 27, 1951. Ina Mae Stouffer thereafter married Homer H. Marshman. The cases were tried on a single record in the Tax Court and the three reviews of the two decisions of the Tax Court have been consolidated on this appeal.
 
 
 2
 Gordon A. Stouffer, hereinafter called Gordon, and Ina Mae Stouffer, hereinafter called Ina Mae, were married on February 22, 1930. This marriage was dissolved by an absolute divorce decree on May 24, 1934. Thereafter, Gordon asked Ina Mae to remarry him, which Ina Mae agreed to do provided Gordon would provide her with some financial security. On March 6, 1937, as part of this reconciliation, Gordon transferred to Ina Mae 2,000 shares of the Class B stock of The Stouffer Corporation, of which he was Vice-President and General Manager, which had an adjusted basis in his hands of $5.00 per share and which were then of the fair market value of $20.00 per share, or an aggregate value of $40,000.00. As part of the transaction Ina Mae executed to Gordon the following option:
 
 
 3
 'In Consideration of One Dollar ($1.00), receipt of which is hereby acknowledged, I hereby give and grant to Gordon A. Stouffer the right and option to purchase from me at any time prior to the first day of January, 1967, two thousand (2000) shares of the Class B Common Stock of The Stouffer Corporation at Twenty Dollars ($20.00) per share, payable in cash. Should any stock dividends be paid on said stock the price herein stipulated shall include such stock dividends. All cash dividends shall belong to the undersigned unless and until said option shall have been exercised.'
 
 
 4
 Ina Mae also agreed to execute an irrevocable proxy in favor of Gordon to vote the stock. The next day, March 7, 1937, Gordon and Ina Mae were remarried.
 
 
 5
 During the years after 1937 and up until 1951 the Stouffer Company engaged in several transactions amounting to capital reorganizations involving stock dividends, stock splits and changes in description and denomination of exchanged stock. In these transactions the 2,000 Class B shares in the name of Ina Mae in 1937 became 20,000 shares of $2.50 par value common stock which Ina Mae held in 1951.
 
 
 6
 Thereafter, Gordon and Ina Mae again experienced marital difficulties and each retained counsel in anticipation of Ina Mae's instituting suit for divorce. During the latter part of 1950 and early part of 1951 counsel for Gordon and counsel for Ina Mae entered into negotiations for an agreement to be submitted to the court for approval in the event of such a divorce, which agreement was executed by the parties on May 10, 1951. On May 11, 1951, Ina Mae filed petition for absolute divorce in Court of Common Pleas of Cuyahoga County, Ohio, and on June 27, 1951, the said court entered a decree of divorce. The decree incorporated the agreement of May 10, 1951. Gordon died June 6, 1956.
 
 
 7
 The following paragraph of the May 10, 1951, agreement gives rise to the issues involved in this litigation:
 
 
 8
 '4. Gordon agrees that, upon the entry of such decree of divorce, any interest which he, or any other person, might, but for this agreement, have in any shares of stock of The Stouffer Corporation now registered in the name of Ina Mae, shall forthwith terminate, and Ina Mae shall continue to own, hold and vote such stock free of any claim by Gordon or anyone claiming by, through, or under him.'
 
 
 9
 The fair market value of the 20,000 shares of the $2.50 par value common stock in the Stouffer Company held by Ina Mae on June 27, 1951, was $20.00 a share.
 
 
 10
 With respect to the income tax of Gordon for the year 1951, the Commissioner determined a deficiency in the amount of $90,077.75 on the ground that Gordon realized a taxable gain in the amount of $359,999.00 upon the surrender of the option in the divorce settlemen and decree. This was based upon the ground that Gordon's option to repurchase for $40,000.00 the 20,000 shares of stock held by Ina Mae, which had a fair market value of $400,000.00, was worth the difference between those two amounts, namely, $360,000.00, less the consideration of $1.00 which Gordon paid at the time the option was executed. The deficiency was based upon the treatment of such taxable gain as a long-term capital gain. Later, however, the Commissioner took the position that the $359,999.00 gain constituted a gain attributable to the failure to exercise an option to buy property which, under Section 117(g)(2) of the Internal Revenue Code of 1939, 26 U.S.C.A. 117(g)(2), constituted a short-term capital gain rather than a long-term capital gain. Treating the gain as a short-term capital gain, the Commissioner asserted an additional deficiency of $233,418.48.
 
 
 11
 The Tax Court sustained the Commissioner's ruling that Gordon realized taxable gain in the amount of $359,999.00, but held that this gain was a long-term capital gain and not, as contended by the Commissioner, a short-term capital gain. The Tax Court accordingly held that there was a deficiency in Gordon's income tax for the taxable year 1951 in the amount of $90,020.75, rather than in the larger amount. In appeal No. 13,945 the Commissioner seeks a review of the refusal of the Tax Court to sustain the additional deficiency of $233,418.48 which would result from a treatment of the gain as a short-term capital gain. In appeal No. 13,946 Gordon's estate seeks a review of the Tax Court's decision determining the deficiency in the amount of $90,020.75 or in any amount.
 
 
 12
 Appeal No. 13,944 involves the income tax liability of Ina Mae for the years 1952 and 1953 based upon the following additional facts. In 1952 Ina Mae sold 100 shares of the Stouffer stock, which was part of the 20,000 shares referred to above. In 1953 she sold 4,750 shares of this stock. The issue in this phase of the litigation is the correct basis of this stock in the hands of Ina Mae for the purpose of determining gain by her upon these sales. Based upon the Tax Court's ruling in the case of Gordon's estate that Gordon had realized a taxable gain of $359,999.00 in surrendering the option, Ina Mae's basis in the 20,000 shares includes the amount of $359,999.00. The deficiencies held by the Tax Court to exist in Ina Mae's tax for the years 1952 and 1953 were based upon this ruling. The Commissioner takes the position that the decision of the Tax Court on this phase of the case is correct but, realizing that should this Court decide against the government on the taxpayer's appeal in appeal No. 13,946, then Ina Mae's basis in the stock sold by her would in such event be accordingly decreased and the deficiencies would be larger. Accordingly, in order to protect the revenue in the event of a reversal in appeal No. 13,946, being the review sought by Stouffer's estate, the Commissioner has sought a review on this phase of the case by appeal No. 13,944.
 
 
 13
 The following sections of the Internal Revenue Code of 1939 are applicable. Section 22(a), 26 U.S.C.A. 22(a), provides that gross income includes gains, profits, and income from sales or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property. Section 22(f) provides, 'In the case of a sale or other disposition of property, the gain or loss shall be computed as provided in section 111.' Section 111(a), 26 U.S.C.A. 11(a), provides, 'The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, * * *.' Section 111(b) provides, 'The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.'
 
 
 14
 The exact question presented has not heretofore been considered by this Court. A closely analogous question has had the consideration of the Board of Tax Appeals and the Courts of Appeals for the Second and Third Circuits.
 
 
 15
 In L.W. Mesta, 42 B.T.A. 933, the taxpayer, while a divorce action by his wife was pending against him, entered into a written agreement with his wife providing for a property settlement. Pursuant to the terms of the agreement the taxpayer transferred to his wife certain securities having a value in excess of their cost to him and she surrendered all of her rights to support and maintenance and to share in his property at his death. The Board held that the rights received by the taxpayer under the agreement had no fair market value, and the taxpayer realized no taxable income as a result of the transaction. The Board pointed out that since the taxpayer received no money in exchange for the securities, the taxable gain under Section 111, Internal Revenue Code, resulting from the transaction would depend upon 'the fair market value of the property (other than money) received'; that the measure of the value of the wife's right to maintenance and support was dependent upon so many uncertain factors that neither the taxpayer nor a revenue officer, even if equipped with all the aid which the actuarial art can apply, could do more than guess at it, Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667; and that the impossibility of evaluating the rights received by the husband constituted an insurmountable obstacle to the application of Section 22 in conjunction with Section 111 of the Internal Revenue Code. The Board also construed the transaction as basically merely a property settlement between a man and his estranged wife-- in other words, a division of property. It said 'To hold that a man has realized taxable income by giving up a substantial portion of his property seems to us unreasonable and not justified either under general law or under the revenue act.'
 
 
 16
 On review by the Third Circuit this ruling was reversed by a three to two vote. Commissioner of Internal Revenue v. Mesta, 3 Cir., 123 F.2d 986, 988, certiorari denied 316 U.S. 695, 62 S.Ct. 1290, 86 L.Ed. 1765, rehearing denied 317 U.S. 704, 63 S.Ct. 24, 87 L.Ed. 552. The majority opinion, relying mainly upon Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, held that Mesta received an economic gain even though he may not have received payment in money or property from Mrs. Mesta; that the disposition of the securities was the taxable event which converted unrealized economic gain into realized economic gain; and that Congress intended a measurement of values under such circumstances, notwithstanding difficulties in determining those values. The Court recognized the difficulty and at the same time attempted to solve it by stating, 'We think that we may make the practical assumption that a man who spends money or gives property of a fixed value for an unliquidated claim is getting his money's worth.' The value of what the taxpayer received was accordingly held to be the same as the increased value of the securities which he transferred to his wife. The Court also stated, without discussion thereof, that the transaction could not be treated as a division of property. The two dissenting members of the Court concurred in the reasons given by the Board in reaching its decision.
 
 
 17
 In the meantime, while the review of the Mesta case was pending in Court of Appeals, the Board of Tax Appeals decided the case of Walter S. Halliwell, 44 B.T.A. 740. This involved the same question, except that the agreement entered into between the parties was approved by the divorce decree which ordered the husband to make the transfers agreed to. The Board considered this difference an immaterial one and approved and followed the Board's prior ruling in L.W. Mesta, supra, 42 B.T.A. 933.
 
 
 18
 On review by the Court of Appeals for the Second Circuit the decision in the Halliwell case was reversed in a per curiam opinion which cited and approved the ruling in Commissioner of Internal Revenue v. Mesta, supra, 3 Cir., 123 F.2d 986, and held that the factual difference pointed out above was a distinction without substance. Commissioner of Internal Revenue v. Halliwell, 2 Cir., 131 F.2d 642.
 
 
 19
 The Tax Court in the present case followed the rulings of the Courts of Appeals in the Mesta and Halliwell cases. Three judges dissented for the reasons given by the Board of Tax Appeals in its opinion in L.W. Mesta, supra, 4i B.T.A. 933.
 
 
 20
 For the purposes of our discussion we will consider appeal No. 13,946 in which Gordon's estate, hereinafter referred to as the taxpayer, seeks a review of the deficiency assessment of $90,020.75. The taxpayer contends that the issue involved is an open one in this circuit and that the ruling of the Court of Appeals, by a closely divided court, in the Mesta case is not a sound one and should not be followed, and that in any event it is not applicable to the different factual situation existing in this case. We are of the opinion that these contentions have merit.
 
 
 21
 We agree with the reasoning of the Board of Tax Appeals in its opinion in the Mesta case that the wife's rights to maintenance and support and to share in the husband's estate in the event of his death are dependent upon so many uncertain factors and are of such a nature as to make it impossible to ascribe to them a 'fair market value' as required by the statute. A review of these factors is given by the Board in 42 B.T.A. at page 940, to which reference is made. We do not think that this problem is correctly solved by giving to those rights the value of the property which is given in exchange. Section 111(b) requires that the capital gain be measured by 'the fair market value of the property * * * received' by the taxpayer, not by the fair market value of the property transferred by the taxpayer in exchange for the property received. To say that the fair market value of the property received is the same as the fair market value of the property given up not only ignores realities, but is the use of a formula which is radically different from the well established and well recognized formula approved by the courts for determining fair market value. Under long established rulings fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. Fitts' Estate v. Commissioner, 8 Cir., 237 F.2d 729, 731; In re Williams Estate, 9 Cir., 256 F.2d 217, 218. A single transaction between a husband and wife made under the emotion, tension and practical necessities involved in a divorce proceeding does not comply with this rule. United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 402-407, 70 S.Ct. 217, 94 L.Ed. 195; Heiner v. Crosby, 3 Cir., 24 F.2d 191, 193; Champlin v. Commissioner, 10 Cir., 71 F.2d 23, 29. See: Sharp v. United States, 191 U.S. 341, 348, 24 S.Ct. 114, 48 L.Ed. 211.
 
 
 22
 The evidence shows that because of the inclusion in the proposed settlement of some 'emotional items', it looked at one time as though the negotiations were going to blow up and that there were occasions when the negotiations appeared about to break down. Under such conditions, values are lost sight of, concessions are made, one does not expect or insist upon getting his money's worth for what he gives up. Unfortunately, it is often the case that what a husband transfers to his wife in a so-called property settlement in a pending divorce action is not given merely in exchange for a release of alimony and dower rights, but also includes, without being so labeled, such additional amount as the husband may be willing to pay in order to have the marriage status terminated. A property settlement in a divorce proceeding is usually influenced and often dictated by numerous intangible, personal and practical considerations which play no part in a transaction between a willing seller and a willing buyer in the open market. The value of what is given up is no criterion of the fair market value of the 'property' received.
 
 
 23
 Recognizing the well settled rule governing the determination of fair market value and the existence of such intangible factors in a property settlement reached by the parties in a pending or contemplated action for absolute divorce, we are not able to agree with the final ruling in the Mesta case that the fair market value of the release by a wife of her alimony and dower rights against her husband and his estate is properly determined by ascertaining and giving to it the fair market value of the property which she receives from her husband. United States v. Toronto, Hamilton & Buffalo Navigation Co., supra, 338 U.S. 396, 402-407, 70 S.Ct. 217.
 
 
 24
 It is no answer to say that the economic gain realized under the ruling in Helvering v. Horst, supra, 311 U.S. 112, 61 S.Ct. 144, will escape taxation unless so evaluated. Nor do we consider it a correct answer to say that Congress intended a measurement of values notwithstanding difficulties in determining those values. Helvering v. Horst dealt with the realization of economic gain, not the valuation of such gain. The valuation and taxation of that gain under Section 111(b) was not involved. What Congress intended in the present case is shown by Section 111(b). By reason of the specific provisions of that section there is no taxable gain unless the amount of such economic gain is measured in a certain way. Congress did not intend or authorize that the measurement of taxable gain be made in any other way than that based on the fair market value of the property received. That requirement has not been complied with. If it has no fair market value, or if such fair market value has not been shown, it may be economic gain but it is not taxable gain by reason of the express provisions of Section 111(b). Champlin v. Commissioner, supra, 10 Cir., 71 F.2d 23, 30.
 
 
 25
 In the present case the situation is further complicated by the question of the validity of the option. The evidence is uncontradicted that Ina Mae's attorney took the position that since the 2,000 shares of B stock no longer existed and the opinion covered stock dividends but not splits, it was only good at its best for 2,000 shares of the new stock for $40,000.00, that Gordon's attorneys devoted approximately sixty-three hous in a study of the problem without arriving at a conclusion, and that there were reasonable grounds for a bona fide dispute. Ina Mae's attorney testified that Gordon's attorney contended that the option was enforceable against the 20,000 shares and that the witness took the position that it was not enforceable. Both the attorney for Gordon and the attorney for Ina Mae testified that Ina Mae's attorney stated that a lawsuit would result if an attempt was made by Gordon to exercise the option for 20,000 shares. Gordon's attorney testified that Ina Mae stated to him when advised that an attempt would be made to exercise the option, 'Well, you'll have to sue me to get it.'; That Ina Mae's attorney stated, 'Well, I don't care. I just don't care whether whether the option is any good or not. As far as I am concerned, I am going to get this stock for Ins Mae and I am going to get all of it.'; that as far as he could recall, there never was any further discussion about the legality of the option from that day on; that at one time he had proposed to release 17,000 shares on behalf of Gordon and keep 3,000 shares; that he later had a tentative agreement with Ina Mae's attorney to release 18,000 shares and keep 2,000 shares; and that finally when they had worked out all the other things in the agreement he gave up on that and agreed to Ina Mae keeping all of the 20,000 shares. Ina Mae's attorney testified that it was apparent to him that this was a settlement of marital affairs, that ultimately it was going to be a division of property, and that it didn't seem to make a great deal of difference in which basket some of the assets were to be, so while it was discussed, it was never pursued to any great lenght; that there were occasions when the negotiations appeared about to breack down; and in that event the matter of the validity of the option would certainly have been one of the questions at issue. It will be noticed that the property settlement agreement provides that any interest which Gordon 'might' have in any shares of stock registered in the name of Ina Mae 'shall forthwith terminate.'
 
 
 26
 In view of this evidence we do not accept the Tax Court's finding that the great weight of the evidence established that there was no dispute between the parties about the validity of the option covering 20,000 shares in 1951, that it was admitted that Gordon was asserting that it covered the 20,000 shares, and the weight of the evidence was that Ins Mae agreed that it covered the 20,000 shares.
 
 
 27
 The Tax Court considered it unnecessary to pass on the validity of the option and did not do so, with which view we concur. The question involved is not whether at some time after the settlement agreement was entered into the option is held to be valid or invalid, but rather than at the time the settlement agreement was entered into there was a bona fide, unresolved dispute between the parties about its validity. It is common knowledge that such a dispute, similar to a cloud on title, has a material adverse effect upon the fair market value of any property being transferred. Champlin v. Commissioner, supra, 10 Cir., 71 F.2d 23, 30. With a bona fide dispute existing between the parties with respect to the validity of the option, with the reasonable possibility that it might be declared invalid, we are of the opinion that it can not be held in the absence of any supporting evidence that the value of the option was nevertheless the same as it would be if no question existed about its validity.
 
 
 28
 Even if we accept the ruling of the Mesta case that the fair market value of the release is the same as the fair market value of the option, it is impossible to tell from the evidence in this case what the fair market value of the option was. If the Commissioner's valuation of the option at its full face value of $359,999.00 is incorrect, it necessarily follows that the assessment was invalid and must be set aside. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Durkee v. Commissioner, 6 Cir., 162 F.2d 184, 187, 173 A.L.R. 553.
 
 
 29
 We agree with the view taken by the Board of Tax Appeals in the Mesta case, concurred in by the dissenting judges on the review of the Board's ruling in the Court of Appeals, and also approved by the three dissenting judges of the Tax Court in this case that the impossibility of evaluating 'the fair market value of the property (other than money) received' by the husband from the wife in the property settlement entered into between them, constitutes an insurmountable obstacle to the application of Section 22(f) in conjunction with Section 111(a) and (b). Accordingly, we are of the opinion that the Commissioner's determination that Gorden Stouffer realized a tax gain in carrying out the divorce settlement was incorrect and the deficiency must be set aside.
 
 
 30
 This ruling in case No. 13,946 also controls the rulings to be made in appeals No. 13,944 and No. 13,945.
 
 
 31
 In the case involving the deficiency assessment against Estate of Gorden A. Stouffer, deceased, out of which arose appeals No.s 13,945 and 13,946, the decision of the Tax Court is reversed and the case remanded to the Tax Court with instructions to enter judgment for said Estate and set aside the deficiency assessment in toto.
 
 
 32
 In the case involving the deficiency assessment against Homer H. and Ina Mae Arshman, out of which arose appeal No. 13,944, the decision of the Tax Court is reversed and the case remanded to the Tax Court for reconsideration and further proceedings in accordance with the ruling in appeals Nos. 13,945 and 13,946.
 
 
 
 [1]
 On the day of the oral argument of the cases in this Court, Judge O'Sullivan was a District Judge sitting by designation. He was sworn in as Circuit Judge on April 4, 1960