Thomas Crawley **DAVIS** and Grace
Ethel Davis
v.
**UNITED STATES.**
No. 516–58.

United States Court of Claims.
March 1, 1961.

Converse Murdoch, Philadelphia, Pa., for plaintiffs.

Peter J. Donahue, Washington, D. C., with whom was Asst. Atty. Gen., Charles K. Rice, for defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

LARAMORE, Judge.

Plaintiff[1] sues to recover an alleged overpayment of taxes for the year 1955. The Commissioner of Internal Revenue proposed to assess a tax deficiency in the sum of $6,318.66 on the basis of disallowance of the deduction of $5,000 for legal fees, and on the basis of including in plaintiff's gross income a net long-term capital gain of $3,737.31, representing the difference between the tax basis to plaintiff of 500 shares of du Pont stock transferred to Alice M. Davis, his former wife, during 1955 and the fair market value of such shares as of the date of transfer to her. The cost basis of the 500 shares of stock transferred on March 21, 1955, was $74,775.37. This stock had a fair market value on that date of $82,-250, or an increase in value over the cost basis of $7,474.63, one-half of which gain, or $3,737.31, was taken into account in the proposed deficiency assessment.

On February 14, 1958, plaintiff paid to the District Director the amount of $6,-961.95, representing the asserted deficiency for 1955 in the amount of $6,-318.66, plus interest of $643.29.

On April 8, 1958, plaintiffs filed their claim for refund of Federal income taxes paid for 1955 in the sum of $13,-642.29. This claim was based on the failure to include all of the $12,506 of legal fees paid by Mr. Davis to a Mr. Young and a Mr. Morford on January 27, 1955, for legal services. Plaintiffs asserted in their claim that $2,500 was on that date paid to each attorney, or a total of $5,000, for legal services in connection with various Federal tax matters arising out of negotiations and execution of a separation and property settlement agreement between Mr. Davis and Alice M. Davis, his former wife. Plaintiffs further asserted that additional sums as legal fees, $5,006 to Mr. Young and $2,-500 to Mr. Morford, were paid on January 27, 1955, for services in connection with the negotiations and execution of the same settlement agreement primarily incurred in connection with the protection of Mr. Davis' position as a stockholder, officer, and director of du Pont. This claim further asserted that the inclusion in income of the net long-term capital gain of $3,737.31 on the 500 shares of du Pont stock transferred to Alice M. Davis on March 21, 1955, was erroneous, because such transfer was pursuant to the same separation and property division agreement and did not result in any income or gain to the taxpayer.

By registered letter dated September 23, 1958, the District Director of Internal Revenue for Delaware notified plaintiffs of the disallowance in full of their claim for refund for the year 1955. This suit results.

Plaintiff contends in this suit that he is entitled to a deduction for two types of legal fees paid by him: First, legal fees paid for tax advice, and second, legal fees incurred in connection with the matter principally involving the protection of plaintiff's position as a stockholder, director, and officer of the du Pont Company. His contention with respect to the tax-

---

1. Grace Ethel Davis, co-plaintiff, is the present wife of Thomas Crawley Davis. A joint tax return was filed for the year 1955. For this reason she joins as plaintiff in this proceeding. Hereinafter, all references to taxpayer will refer to Thomas Crawley Davis alone.

able gain on the stock transferred will be discussed later.

Plaintiff points to section 212(3) of the Internal Revenue Code of 1954, 26 U.S. C. § 212(3), which was applicable for the calendar year 1955, in support of his contention that legal fees paid for tax advice in connection with the negotiations of the property division and separation agreement are deductible.

Section 212(3) provides:

"Sec. 212. Expenses for Production of Income.

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

\*　　\*　　\*　　\*　　\*　　\*

"(3) in connection with the determination, collection, or refund of any tax."

Plaintiff then points to the Treasury Regulations under the above-quoted statutory provision as supporting his contention.

Treasury Regulation § 1.212–1 reads as follows:

"§ 1.212–1. Nontrade or nonbusiness expenses.—

"(1) Expenses paid or incurred by an individual in connection with the determination, collection, or refund of any tax, whether the taxing authority be Federal, State, or municipal, and whether the tax be income, estate, gift, property, or any other tax, are deductible. Thus, expenses paid or incurred by a taxpayer for tax counsel or expenses paid or incurred in connection with the preparation of his tax returns or in connection with any proceedings involved in determining the extent of tax liability or in contesting his tax liability are deductible."

Section 212(3) plaintiff says applies for the reason that the evidence shows that both Thomas Crawley Davis and his former wife were constantly aware of Federal income and gift tax problems which would vitally affect both parties in the negotiation. Further, that a new income tax code had just previously been enacted which involved extensive revisions of the prior internal revenue laws, and that tax advice was sought from attorneys for both parties. Consequently, plaintiff contends that he is entitled to deduct the fees paid as services for " \*　\* tax counsel or expenses paid or incurred in connection with the preparation of \*　\*　\* tax returns　\*　\*　\*."

 We have no doubt that Congress in enacting section 212, supra, meant to grant a deduction for legal fees in connection with a determination, collection, or refund of any tax. The question then is whether the fees paid by plaintiff come within the purview of the Act. In the light of the Treasury Regulations promulgated thereunder, we think the question can only be answered in the affirmative. The Regulation, section 1.212–1, quoted above, specifically provides that expenses paid or incurred for tax counsel " \*　\*　\* in connection with any proceedings involved in determining the extent of tax liability　\*　\*　\* are deductible." Therefore, it seems clear that the statute and regulations are broad enough to cover the deduction asked for.

The facts here show that in negotiating the separation and property settlement agreement, both Mr. Young and Mr. Morford considered the Federal income and gift tax consequences flowing from the various phases of the proposals made during the course of negotiations. Each attorney, however, considered such problems from the standpoint of his own client, and this same concentration for the interests of his own client was practiced by each attorney in negotiating the overall aspects of the property settlement agreement.

Further, the facts show that the bills for attorneys' fees were separated into two categories—one for services regarding the separation agreement, and the other for services in regard to tax matters. In this connection there is no evidence indicating that such allocation was done in bad faith, and the cases are

legion holding that absent such evidence, such allocation should be accepted. Maine Steel, Inc. v. United States, D.C. 1959, 174 F.Supp. 702, 716; Anita M. Baldwin, 1928, 10 B.T.A. 1198. Cf. Joseph Frank, 1954, 22 T.C. 945, affirmed per curiam, 6 Cir., 1955, 226 F.2d 600; Bryant Heater Co. v. Commissioner, 6 Cir., 1956, 231 F.2d 938.

In view of the foregoing, it seems obvious that the fees paid by plaintiff for consultation and advice in tax matters arising in connection with the settlement agreement are properly deductible from gross income.

This is not to say, however, that the fees paid to his former wife's attorney, Mr. Morford, are also deductible. In spite of the fact that Mr. Davis was legally liable for his wife's attorney's fees, the evidence conclusively shows that Mr. Morford worked exclusively for his client, Mrs. Davis, and considered the problems from the standpoint of his client alone. Certainly then it cannot be said that Mr. Morford's advice was directed to plaintiff's tax problems, and in order to qualify for a deduction, we think the attorneys' fees must be directly and only connected with the taxpayer's estate. Consequently, we hold that only the attorney's fees paid by plaintiff to his personal attorney, Mr. Young, for tax advice, are properly deductible from his 1955 gross income.

 Next we turn to the question of whether the taxpayer is entitled to deduct the amount paid Messrs. Young and Morford, representing charges for legal services in connection with the negotiation of a property division and separation agreement.

In this connection plaintiff contends that the legal fees were paid in connection with the preservation of his position as a stockholder, director, and officer of the du Pont Company and that said fees are deductible under the provisions of section 212(1, 2) of the Internal Revenue Code of 1954, supra.

At the outset of the discussion respecting this issue, we point out that the taxpayer is not entitled to a deduction for personal, living or family expenses under section 262 of the Internal Revenue Code of 1954, 26 U.S.C. § 262, supra, and Treasury Regulation § 1.262–1(b) (7).

Section 262 of the Internal Revenue Code of 1954, supra, reads as follows:

"Personal, Living, and Family Expenses

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living or family expenses."

Treasury Regulation section 1.262–1(b) (7) provides:

"Personal, Living, and Family Expenses.—(a) *In general.* In computing taxable income, no deduction shall be allowed, except as otherwise expressly provided in chapter 1 of the Internal Revenue Code of 1954, for personal, living and family expenses.

"(b) Examples of personal, living, and family expenses. Personal, living, and family expenses are illustrated in the following examples:

\* \* \* \* \* \*

"(7) Generally, attorney's fees and other costs paid in connection with a divorce, separation, or decree for support are not deductible by either husband or the wife. \* \*"

Therefore, in order to bring himself under the section permitting the deduction, plaintiff must show that the legal expenses were incurred in matters directly related to his business or the management, conservation or maintenance of property held for the production of income. See Port v. United States, 163 F.Supp. 645, 143 Ct.Cl. 334.

Plaintiff cites the cases of McMurtry v. United States, 1955, 132 F.Supp. 114, 132 Ct.Cl. 418; Baer v. Commissioner, 8 Cir., 1952, 196 F.2d 646; Bowers v. Commissioner, 6 Cir., 1957, 243 F.2d 904; and Fisher v. United States, D.C.1957, 157 F.Supp. 364.

Defendant in opposition cites the U.S Supreme Court decision in the case of Lykes v. United States, 1951, 343 U.S.

118, 72 S.Ct. 585, 96 L.Ed. 791, wherein the Supreme Court reviewed the legislative history of section 23(a) (2) of the 1939 Code, the predecessor to section 212 of the 1954 Code, which showed that Congress intended to allow deduction for income-producing activities of a commercial nature only and did not intend to allow the deduction of any expense designed to aid taxpayer to retain their property. The Supreme Court in Lykes stated at page 125 of 343 U.S., at page 589 of 72 S.Ct.:

> "Legal expenses do not become deductible merely because they are paid for services which relieve a taxpayer of liability. That argument would carry us too far. It would mean that the expense of defending almost any claim would be deductible by a taxpayer on the ground that such defense was made to help him keep clear of liens whatever income-producing property he might have."

Admittedly, some courts have departed from the philosophy of the Lykes decision. Baer v. Commissioner, supra; McMurtry v. United States, supra; Bowers v. Commissioner, supra; Owens v. Commissioner, 5 Cir., 1959, 273 F.2d 251; Fisher v. United States, supra; and Patrick v. United States, D.C.1960, 186 F. Supp. 48. However, many courts have not followed the departure or have distinguished the case on factual grounds. Lewis v. Commissioner, 2 Cir., 1958, 253 F.2d 821; Tressler v. Commissioner, 9 Cir., 1955, 228 F.2d 356; Howard v. Commissioner, 9 Cir., 1953, 202 F.2d 28; Richardson v. Commissioner, 4 Cir., 1956, 234 F.2d 248; Smith's Estate v. Commissioner, 3 Cir., 1953, 208 F.2d 349; Donnelley v. Commissioner, 1951, 16 T.C. 1196; Estate of Walsh v. Commissioner, 1957, 28 T.C. 1274; Douglas v. Commissioner, 1959, 33 T.C. 349.

Of course, the defendant contends the rule in the Lykes case as followed by the court in the case of Lewis v. Commissioner, supra, is correct. On the other hand, plaintiff is just as positive that the McMurtry, Baer, etc., cases provide the correct rule.

However, we believe that it is not necessary here to choose which decision is correct in the premises. We believe the cases cited by plaintiff are factually distinguishable from the facts in the case at bar.

The McMurtry decision, supra, related to a situation wherein the plaintiff's position to some extent depended on the amount of his stockholdings in the company.

In the Baer case, supra, the taxpayer owned a controlling interest in a closely held corporation and to have acceded to his wife's demands would have resulted in not only loss of control of the company and loss of dividends, but no doubt would have resulted in loss of his salary as well, if other and adverse parties gained control.

In Bowers v. Commissioner, supra, and Patrick v. United States, supra, as well as Fisher v. United States, supra, practically the same situation as in Baer, supra, existed. It was necessary for Bowers to retain the stock in order to maintain his control, management and income.

In the present case by contrast, almost all the legal expenses were incurred by reason of the marital rift between Mr. and Mrs. Davis. As a consquence thereof, his attorney's fees were practically all incurred in an effort to hold to a minimum the amount necessary to effect a property settlement. It naturally follows that the attorney's fees paid for Mrs. Davis' attorney were to gain a maximum amount in the property settlement agreement. Furthermore, we believe from the evidence that in any event plaintiff has failed to prove that retention of the stock was necessary to maintain him as an officer and director of du Pont. As a matter of fact, at the time of Davis' election to the Board, his stockholdings were substantially less than those of any other person nominated by the management for election to the Board. Furthermore, during Mr. Davis' service as a director, every person nominated by the management of du Pont was elected by the stockholders as a director.

Therefore, we think the facts of this case more nearly come under the rule laid down by the court in the cases of Lewis v. Commissioner, supra; Tressler v. Commissioner, supra; Howard v. Commissioner, supra; Richardson v. Commissioner, supra; Smith's Estate v. Commissioner, supra; Donnelley v. Commissioner, supra; Estate of Walsh v. Commissioner, supra; Douglas v. Commissioner, supra.

The above cases all stand for the proposition that attorneys' fees generally seek to conserve estates but are not necessarily the basis for a deduction under the Internal Revenue Code. Thus we believe the rule of the Lewis case, supra, is the correct one in these premises; i. e., following the Supreme Court's decision in Lykes v. United States, supra, the Court held that the legal expenses were not deductible. The above reasoning was followed by this court in the case of Port v. United States, supra.

Thus we hold that the attorneys' fees paid to both lawyers constituted personal expenses which are nondeductible under section 262 of the 1954 Code, supra.

■■■ The next and final contention of the taxpayer is that the taxpayer did not realize taxable gain by virtue of the stock transfer to his former wife pursuant to the property settlement agreement, and consequently the inclusion in income of the net long-term capital gain was erroneous.

The facts respecting the above situation are these: Pursuant to the separation agreement the taxpayer, Davis, transferred 500 shares of du Pont stock to his former wife, Alice M. Davis, in 1955. The taxpayer's cost basis of the stock was $74,775.37 and the fair market value at the time of transfer was $82,250. The difference was taxed as capital gain under section 1001 of the Internal Revenue Code of 1954, 26 U.S.C. § 1001 (1958 Ed.) which provides:

"Determination of Amount of and Recognition of Gain or Loss

"(a) *Computation of Gain or Loss.*—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

"(b) *Amount Realized.*—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

Plaintiff contends that the transfer of the stock was not in satisfaction of Alice M. Davis' right to support and maintenance, but was a part of a division of property. Plaintiff argues that Mrs. Davis' rights to support and maintenance were satisfied by the payment of $550 per month and the payment of dividends on a maximum of 1,000 shares of du Pont stock. This is so, plaintiff says, because the division of property was contained in one paragraph of the separation agreement, whereas the payments in lieu of alimony were in another paragraph.

It is the defendant's contention that under the rule laid down in the case of Commissioner of Internal Revenue v. Mesta, 3 Cir., 1941, 123 F.2d 986, certiorari denied 1942, 316 U.S. 695, 62 S.Ct. 1290, 86 L.Ed. 1765, and Commissioner of Internal Revenue v. Halliwell, 2 Cir., 1942, 131 F.2d 642, certiorari denied 319 U.S. 741, 63 S.Ct. 1029, 87 L.Ed. 1698, the increment in value was clearly taxable gain.

Plaintiff then argues the incorrectness of the Mesta decision, supra, and concludes with the statement in his brief that "plaintiffs are not prepared to concede the correctness of the Mesta decision, but believe that since the rule of that case is not here applicable it is not necessary to further consider the Mesta case." Plaintiff further contends that the Mesta decision is not applicable because that case involved a transfer of property in connection with a division of property and not a transfer in satisfaction of the husband's (plaintiff Davis)

obligation to support. To support this contention plaintiff cites the case of Commissioner of Internal Revenue v. Marshman, 6 Cir., 1960, 279 F.2d 27, certiorari denied 364 U.S. 918, 81 S.Ct. 282, 5 L.Ed. 2d 259.

Thus the situation is this: The Court of Appeals in the Third Circuit in a case involving an almost identical proposition, in 1941 found that there was a taxable capital gain. The Supreme Court denied certiorari. In 1942 the Court of Appeals, Second Circuit, in a substantially same situation reversed the Tax Court and found against the taxpayer. Commissioner of Internal Revenue v. Halliwell, supra. The Supreme Court denied certiorari. The ruling in the Mesta case, supra, was cited with approval and followed by the court in Halliwell. Then in 1960, after the Tax Court had followed the 1941 and 1942 decisions, the Court of Appeals for the Sixth Circuit in the Marshman case, supra, reversed the Tax Court and specifically rejected the rule of the two cases in the Second and Third Circuit. The Marshman situation also is almost identical with the facts in the instant case. On December 12, 1960, the Supreme Court denied certiorari in the Marshman case. The result is that we are faced with two precedents pointing in opposite directions and an attempt to distinguish the two is impossible.

Since there is no clear ground for distinguishment between the rule of the Mesta-Halliwell cases and the Marshman case, it behooves us to decide which rule is the correct one in the premises. While admittedly it is a troublesome question, we are of the opinion that the facts of the instant case more nearly come under the reasoning and the rule of the Marshman case. We say this because the statute, section 1001(b), expressly states that the amount realized from the sale or other disposition of property shall be the sum of any money *received* plus the fair market value of the property *received*. We think as did the court in Marshman, supra, that the measurement of gain cannot be the fair market value of the property transferred. We also believe, as did the court in Marshman, that the measure of the value of the wife's right to maintenance and support was dependent upon so many uncertain factors that neither the taxpayer nor a revenue officer could do more than guess at it.

Furthermore, to say that the fair market value of the property received is the same as the fair market value of the property given up, is the use of a formula different from the well-established formula for determining fair market value. Fair market value is the price at which property would change hands between a willing seller and a willing buyer, neither being under any compulsion to buy or sell. Again we agree with the court in the Marshman case that a transaction between a husband and a wife made under the emotion, tension and practical necessities involved in a divorce proceeding does not comply with this rule.

Under the evidence of this case, like Marshman, many demands were made, many concessions were made, and under these circumstances values are lost sight of. This is especially true under the circumstances of this case wherein the husband even became ill because of the tensions resulting from the marital troubles. So it is reasonable to say that in some measure the husband was willing to pay at least some amount in order to have the marriage terminated. In these circumstances, the value of what was given up is no criterion of the fair market value of the "property" received.

For the above reasons, we cannot agree with the ruling in the Mesta case that the fair market value of the release by a wife of her alimony and dower rights against her husband and his estate is properly determined by ascertaining and giving to it the fair market value of the property which she received from her husband.

If the "property" received by Davis had no fair market value, or if none has been shown, it may be economic gain but it is not taxable gain by reason of the express provision of section 1001(b).

Champlin v. Commissioner, 10 Cir., 71 F.2d 23, 29.

Therefore, we believe that T. C. Davis did not realize taxable gain by virtue of the 1955 transfer of stock pursuant to the property settlement agreement. Consequently, plaintiff is entitled to recover the amount paid pursuant to the inclusion of capital gain in his 1955 tax, in addition to the amount paid by reason of the inclusion of attorney's fees paid his attorney for tax advice.

The exact amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and DURFEE, MADDEN, and WHITAKER, Judges, concur.